## PHILLIPS *v.* HŒFER.

### IN ERROR.

It is actionable to say of a farmer, falsely and maliciously, that "*the sheriff will sell him out one of these days, and claims against him not sued will be lost;*" the credit which he has being a means to support his business.

THIS was a writ of error to the Common Pleas of Berks county. The action below was brought by Hœfer against Phillips for slander, and in the declaration the slanderous words were laid in three counts.

The *first* count charged, that "Whereas the said Daniel Hœfer now is, and for divers years now last past hath been a farmer, and hath for all the said time used and exercised the art, trade, and business of a farmer, without any falsity, trick, or deceit, and always well and faithfully observing and keeping up his credit and days of payment of all sums of money contracted by him in his said business with all his contracts, and hath thereby, for all the time aforesaid, quietly and honestly sought and got his livelihood and faculty of living, by means whereby, &c. Yet the said Peter Phillips, well knowing all and singular the premises aforesaid, but greatly envying the happy state and condition of the said Daniel Hœfer, and contriving and maliciously intending to hurt, injure, degrade and damnify the said Daniel Hœfer in his good name, fame, reputation, and credit in his business aforesaid; and to cause him, the said Daniel, to be reputed to be a person of no credit, and unable to pay his just and true debts, on the        day of October, in the year of our Lord one thousand eight hundred and forty-three, at                    in the county aforesaid, in a certain discourse which he, Peter Phillips, then and there had with divers worthy citizens of this commonwealth, of

and concerning the said Daniel Hœfer, in his business aforesaid, as well as credit; he, the said Peter Phillips, then and there falsely and maliciously said and proclaimed openly, and loudly published these false, feigned, scandalous, and opprobrious German words following, of the said Daniel Hœfer, in his business and credit aforesaid, in the presence and hearing of those citizens, to wit:—'*Der Schrieff komt anes van denen tag ruff, und verkauft dem Daniel Hœfer si sach—er het de letzte woche schon komme solle, oder yezt komft er ;*' those German words meaning, when translated into the English language, (The sheriff is coming up one of these days, and will sell Daniel Hœfer's goods or things—he was to have come last week already, but now he will come)—meaning that the sheriff would sell out Daniel Hœfer; that he was to have done so the week before, but that he would certainly now come for the purpose of selling him, the said Daniel Hœfer, out."

The *second* count charged, that " The said Peter Phillips then and there falsely and maliciously said and proclaimed openly, and loudly published these other false, feigned, scandalous, and opprobrious German words following, of the said Daniel Hœfer to the said Rebecca Borky, in the presence and hearing of those citizens, they, the said citizens well understanding, to wit:—' *Hat ier noch etwas an den Daniel Hœfer zu fottern—wen dier hat, so misset ihr anpacken schonst grieg dir nix—der Schrieff ferkauft ihne aus*'—they, the said citizens, well understanding the false and scandalous German words, &c. Those German words, being translated into the English language, meaning and purporting as follows—Have you any claims against Daniel Hœfer yet (at this time)? if you have you must attack him, or you will get nothing; the sheriff will sell him out, (meaning that if they had any claim against Daniel Hœfer they must sue him, the said Daniel Hœfer, or they would get nothing; that the said Daniel Hœfer would be sold out by the sheriff.)"

The *third* count charged, that " The said Phillips then and there falsely and maliciously said, proclaimed openly and loudly, and published these other false, feigned, scandalous, and opprobrious German words following, of the said Daniel Hœfer to the said Henry Weber, in the presence and hearing of divers good citizens of this commonwealth, to wit:—'*Wan du den Daniel Hœfer nicht pushe dust fur dem Stephen und Heinrich Kauffman ihr geld den verluhrest duest, der Schrieff kom't eins von dieser tage heude oder morgen, und verkauft dem Daniel Hœfer sein sach.*' These false, feigned, and scandalous German words being translated into the English language, have the same meaning and purport as follows, to wit:—If you don't proceed against Daniel Hœfer for Stephen and Henry Kauffman's money, you

will lose the same. The sheriff will come one of these days—to-day or to-morrow—and sell Daniel Hœfer's property, (meaning that if he, the said Henry Weber, did not sue him, the said Daniel Hœfer, meaning for the moneys due Stephen and Henry Kauffman, which the said Henry Weber was appointed to collect)—he (Henry Weber meaning) would lose the same. That the sheriff would come one of these days—to-day or to-morrow—for the purpose of selling him (the said Daniel Hœfer meaning) out; by means of speaking and publishing of which said several false, feigned, scandalous and opprobrious words, he, the said Daniel Hœfer, is not only much hurt and prejudiced in his good name, fame, credit, &c.; that they, the said Henry Weber and Jacob Yoder, Israel Miller, Jacob Haas, and Elizabeth Stout, for the recovery of the several sums due to them, impleaded the said Daniel Hœfer and sued and prosecuted him, and put him to great expenses, to wit, at the county aforesaid; and also divers other persons to whom the said Daniel Hœfer was indebted in divers and sundry great sums of money at the time of the speaking of the said words, have on that occasion, on a sudden and in an untimely manner, prosecuted and sued the said Daniel Hœfer, at law, for the recovery and obtaining of their respective debts then due to them respectively as aforesaid; insomuch, &c.

The charge of the court below to the jury, which contains a full statement of the facts, was delivered by Banks, president:

"This is an action of slander; the plaintiff is a farmer, living upon rented lands; he has proved that the defendant said he was not able to pay his debts, that he owed more than he was worth, and that those whom he owed had better push him, or they would lose by him; it is also proved, that in consequence of these words of the defendant, the plaintiff was sued by several persons, and thus was harassed and put to cost. It does not appear that the plaintiff was unable to pay his debts; there is no evidence that any creditor suffered any loss by him. It is said by the plaintiff that these statements thus made by the defendant were false, and that he knew them to be so when he made them, and that they were made maliciously, and with a design to injure him. Whether the facts proved satisfy you that these things are so or not, is for you to decide from the evidence. Whether, if you believe all these things to be true, it is actionable, is a question of law which the court will determine; the facts you will decide for yourselves, without being bound in any way by what I may have said in relation to them. The law looks upon credit with care and tenderness, as essential to trade and business generally. Formerly words imputing want of credit, to be actionable, must have imputed bankruptcy. This restricted this kind

of verbal slander to words spoken against merchants. This notion was very soon exploded, and this narrow doctrine abandoned for one that was more just and sensible, and was declared to extend to imputations against the credit of persons engaged in *any business.* This rule now applies not only to merchants, but also to persons engaged in all trades and mechanical pursuits. Why should it not apply to farmers and husbandmen? credit is important to them; their sensibility on this point is as tender as is that of any other class in the community; their sense of honour is as bright and correct on the question of credit as any men's. Why then is it not to be equally cared for, respected, and protected? I imagine that no satisfactory reason could be given for an invidious distinction against the husbandman. The loss of credit bears as injuriously upon him as upon any man. His means of living and the subsistence of his family are as much endangered by its loss as are those of any class of our labouring community; his business and his occupation is an important branch of industry. The larger portion of our people is engaged in active agriculture; is not character and credit as dear to this class as it is to merchants, tradesmen, or mechanics? The malignity which wantonly assails the one, is as culpable as that which assails the other; why then should not the same rule apply to all? There is no substantial difference, and there should be no distinction in the rule of security and protection. In Starkie on Slander, at p. 119, we have an authority to the very point now at issue. There we have the case of a defendant who said of a husbandman, 'He owes more than he is worth; he is a runaway.' These words were held to be actionable. The counsel have not taken the trouble to prepare any authorities on either side. I have, therefore, been obliged to cast around for such authorities as came within my reach in the hurry of the trial. I adopt this as law in this case, and will apply it in the following form and terms:

" If you believe that the defendant made it his business to slander the credit of the plaintiff; that his object in so doing was to injure him; that this was his purpose; that the charges were false, and that he knew them to be so at the time he gave utterance to them; that he made them maliciously, and that in consequence of them being so made, the plaintiff was sued and put to trouble and costs, then, and in that case only are the words proven to have been spoken by the defendant of the plaintiff actionable, and then and in that case only will you render a verdict for the plaintiff for such sum in damages, as you think right under all the circumstances of the case."

The jury found a general verdict for the plaintiff, and assessed the damages at $45; and the defendant, having taken a bill of exceptions

to the charge, removed the record to this court and assigned the following errors:

1. The court erred in charging the jury that the plaintiff was entitled to recover.

2. The court erred in declaring the law to be, that the words spoken and laid were actionable, and that this suit could be maintained.

*Filbert,* for the plaintiff in error.

No one branch of the law appears to be more unsettled, and the decisions upon it more uncertain and fluctuating, than the law of slander. There are some principles, however, which appear to be fixed and settled.

The cause now under discussion will lead us to examine that class of cases where the words spoken and charged injuriously affect a man's office, business, or profession. In order to make such words slanderous, it must appear that the words spoken have a direct, plain, and unquestionable allusion to a man's business or profession. Words spoken generally of a man, that may incidentally and only remotely affect his business reputation, cannot be brought into this class of cases; and therefore we say, that the words laid in the declaration, and proved at the trial, are not actionable, because they do not refer to the business or profession of the plaintiff; had no reference to any thing whatever, except that the plaintiff owed almost everybody, and that unless his neighbours looked to it, they might lose their money. Almost all the cases cited in Starkie, 74, are put expressly on this ground.

Again, words to be actionable in themselves must intend to injure prospectively, and must, therefore, attack a man's integrity, skill, diligence, credit, or in some direct and positive way the subject-matter in which he deals. Starkie, 76 and 80.

The words must also be false and unfounded. The words proved by the testimony are very different from the words repeated in the charge of the judge to the jury. It was not every thing that the defendant said of the plaintiff that was false and unfounded; he did not put into circulation a gratuitous and false report, and to people with whom the plaintiff had nothing to do; but as far as the testimony goes, he only spoke to such as were creditors of the plaintiff. If what was said was calculated to hurt the plaintiff, it was also calculated to benefit his creditors.

Again, words to be actionable must be defamatory and scandalous.

The question here is, are the words charged in the declaration actionable in themselves because used of a farmer? A farmer wants no

credit. Whatever he sells, he sells for cash. The merchant, the trader, all who buy and sell want credit; but not so the farmer.

Again, words not actionable in themselves become so by reason of special damage. In this case the plaintiff's counsel has put his right to recover on the ground of special damage, and such is the allegation in the declaration. But the judge in one part of his charge puts the right of recovery on the ground, that the words charged in the declaration are actionable in themselves, without proof of special damage; and in another part, that they became so by reason of special damage. Neither the declaration nor the charge of the court represent this case to have been of an actionable character. It is not sufficient to bring a case within the true rule of law, that the declaration has been correctly framed; the allegation contained in it must be supported by the evidence. That the plaintiff was sued, harassed, and put to great expense, &c., is set out as part of the special damage, and to this the witnesses testify. The damage must be the immediate consequence of the slander; but the plaintiff would not have been sued if he had not been in debt. He was not sued because the defendant said he was in debt, &c., but because he owed money to the people who sued him. These actions ought not to be encouraged, because they are against the policy of good laws.

*Sallade* and *Smith,* for defendant in error.

Hœfer was a farmer and the tenant of Phillips. One of the objects of Phillips in slandering Hœfer, was to get him to leave his farm before his lease had expired; and as a means of accomplishing this, he wished to break him up. To induce his creditors to bring a suit against him, and to ruin or injure his credit, he published the words charged in our declaration. The slanderous words, charged in the declaration, are actionable; and in support of this position, they cited Dobson *v.* Thornistone, 3 Mod. 112, in which it was decided, that the words, " *he owes more money than he is worth; he is run away and broke,*" spoken of a farmer, are actionable. In Chapman *v.* Lampire, 3 Mod. 155, to say of a carpenter, " he is broken and run away, and will never return again," was held actionable.

And to the same principle, they cited Starkie on Slander, 84, 83. To say of a milliner, " You are not worth a farthing," is actionable. Hamson *v.* Thornborough, 10 Mod. 196. To say of a drover, that " he is a bankrupt," held actionable. 2 Day, 495. Slander will lie, for the speaking of words imputing insolvency to any one, to whom credit is important in the prosecution of his business. Ostrom *v.* Calkings, 5 Wend. 263. Any words spoken of a person in relation to his trade, or profession, which tend to impair his credit, are actionable.

Davis *v*. Davis, 1 Nott & McCord, 290. Words, if spoken of one, in any trade, profession, or office, which may be of probable ill consequence to such person, will afford a ground of suit. Per Yeates, Justice, McClung *v*. Ross, 5 Bin. 221.

The opinion of the court was delivered by SERGEANT, J.

That the words laid are actionable, seems fully supported by the authorities. In Dobson *v*. Thornistone, 3 Mod. 112, the plaintiff was a husbandman, and brought an action against the defendant for these words, " *he owes more money than he is worth; he is run away and broke*." After verdict it was moved in arrest of judgment, that the words being spoken of a farmer are not actionable; it must appear the plaintiff has a trade and gets a living by it, otherwise the words spoken will not bear an action. But the court held the words actionable.

The like judgment was given in the case of a carpenter for words, " *he is broke and ran away*," Id. 155. The reason is, that the credit, which a man has in the world, is a means to support his business, and damage is implied from the false and malicious uttering of words calculated to impair it.                    Judgment affirmed.