## Hartman Company, Inc., *v.* Hyman et al., Appellants.

*Slander—Words slanderous per se—Privileged communication— Question of law—Credit association—Information as to delinquent accounts.*

In the trial of an action of trespass to recover damage for slander, it appeared that defendants and other produce dealers were members of a credit and collection bureau, which prohibited the extension of credit by any of its members to any person or firm reported delinquent in payment of bills; that defendants mistakenly reported the plaintiff company delinquent; and that, as a result thereof, the plaintiff company was refused credit in the purchase of produce.  Under such circumstances, a verdict for the plaintiff will be sustained, even though the plaintiff neither alleged nor proved special damages.

When words are spoken of another which tend to injure him in

his business or calling, they are slanderous per se, and neither express malice nor special damage need be proved.

A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner, and upon reasonable or probable cause, and, as the immunity of such a communication, is an exception to the general rule that nothing short of the truth is defense, he who relies upon the exception must prove all the facts necessary to bring himself within it.

Where one merchant writes to another, asking for information as to the credit standing of a third person, the answer to such an inquiry is deemed to be made on a proper occasion. If, instead of waiting for formal inquiries, members of an association of merchants agree to exchange such information voluntarily with one another, the situation is not altered, because this may be construed to amount to an outstanding inquiry on the part of each member of all others, with the same force and effect as though a specific inquiry had been made in any given case.

A communication by a member of a credit association to the other members, blacklisting a person as a delinquent debtor, is libelous if it is made for the purpose of coercing the payment of a debt.

The question whether or not a communication is privileged is primarily a question of law for the court, where the facts and circumstances surrounding the publication are not in dispute.

Argued October 21, 1925. Appeal No. 220, October T., 1925, by defendants, from judgment C. P. No. 2 Philadelphia County, No. 343, September T., 1923, in the case of J. Hartman Company, Inc., v. Charles Hyman and Harry Lieberman, trading as Hyman and Lieberman. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Trespass for slander. Before STERN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $500 and judgment thereon. Defendants appealed.

*Errors assigned,* were, among others, the charge of the court and the refusal of defendants' motion for judgment non obstante veredicto.

*Robert B. Greer,* and with him *Herman N. Schwartz* and *Ruby R. Vale,* for appellants.—The communication

was qualifiedly privileged: McIntyre v. Weinert, 195 Pa. 52; McDonald v. Lee, 246 Pa. 253; Scott v. Pittsburgh, 266 Pa. 52; Phila. to use v. T. B. Rice & Sons, 274 Pa. 256.

*Robert F. Jackson,* and with him *Harold B. Beitler,* for appellee.—The words were actionable per se: Price v. Conway, 134 Pa. 340; Leitz v. Hohman, 16 Pa. Superior Ct. 276, 283.

The communication was not qualifiedly privileged: Neeb v. Hope, 111 Pa. 145, 154; Echard v. Morton, 26 Pa. Superior Ct. 579, 583; Ingram v. Reed, 5 Pa. Superior Ct. 550, 559.

OPINION BY GAWTHROP, J., February 26, 1926:

This is an action for slander. The facts as disclosed by the record are briefly as follows: Defendants and other wholesale produce dealers are members of the Philadelphia Produce, Credit and Collection Bureau. The by-laws of the bureau provide that all bills for goods sold to any purchaser shall be due and payable on the Saturday after the sale shall have been made and that if a bill is not paid by the purchaser on or before noon of the succeeding Wednesday, the creditor, who is a member of the bureau, shall report that fact to the bureau. A member who fails to make such report is subject to a fine. Members are prohibited from selling on credit to any person or firm whose delinquency has been so reported by a member, until they have been duly notified by the secretary of the bureau that the overdue account has been paid. Failure to comply with this provision by any member subjects him to a fine. Defendants had among their customers the plaintiff company, which carries on a retail produce business in the Reading Terminal Market in Philadelphia, and also another customer by the name of Hartman, whose place of business was in Trenton, New Jersey. The latter was indebted to defendants in the sum

of $216.25. On Wednesday, July 25, 1923, defendants telephoned to the bureau that J. Hartman was indebted to them in the sum of $216.25. Later in the day defendants sent to the secretary of the bureau written notice that "J. Hartman—Terminal Market" was delinquent in its account with them in the sum of $216.25, although in fact plaintiff was not indebted to defendants. On the same evening there was delivered to each member of the bureau by messenger notice of the report received from defendants about plaintiff, with the result that when the president of plaintiff company went the next day to make his customary purchases he was informed by members of the bureau from who he desired to purchase produce that his name was on the "black list," and that he could not purchase any goods on credit. Not being prepared to buy for cash he was unable to obtain any produce that morning and could not supply his customers that day. When Mr. Hartman called defendant's attention to the situation, they discovered their error and notified the bureau, which immediately sent a notice to its members, withdrawing plaintiff from the "black list." In plaintiff's statement of claim there was no averment of any special damage resulting to plaintiff from the alleged slanderous words, nor was there any proof of such damage at the trial. The claim was for general damages flowing from words said to be actionable per se. The jury returned a verdict for plaintiff for $500 and the present appeal is from the judgment entered thereon.

Counsel for appellant states at the beginning of his written argument that the question involved in this appeal is the nature of the communication; that if qualifiedly privileged, the assignments of error must be sustained; and if not, the appeal should be dismissed. The learned trial judge instructed the jury that the communication was not qualifiedly privileged. It is well settled in this State that when words are spoken of an-

other which tend to injure him in his business or calling, they are slanderous per se and neither express malice nor special damage need be proved. (Holland v. Flick, 212 Pa. 201; McIntyre v. Weinert, 195 Pa. 52; Price v. Conway, 134 Pa. 340; Leitz v. Hohman, 16 Pa. Superior Ct. 276; Wood v. Boyle, 177 Pa. 620; Newell on Slander and Libel, 4th Ed., pp. 184 and 185.) Legal malice exists where a wrongful act is done intentionally: Neeb v. Hope, 111 Pa. 145, 152. That the slanderous words complained of by plaintiff tended to injure his business credit must be admitted. As they were untrue and were uttered voluntarily they must be adjudged malicious, unless they be shown to be justifiably spoken. Justification is attempted to be established on the ground that they amounted to a privileged communication.

A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and upon reasonable or probable cause: Conroy v. Pittsburgh Times, 139 Pa. 334, 338; and, as the immunity of such a communication is an exception to the general rule that nothing short of the truth is a defense, he who relies upon the exception must prove all the facts necessary to bring himself within it: Mulderig v. Wilkes-Barre Times, 215 Pa. 470. The question whether or not a communication is privileged is primarily a question of law for the court, where the facts and circumstances surrounding the publication are not in dispute: Briggs v. Garrett, 111 Pa. 404; Neeb v. Hope, supra; Echard v. Morton, 26 Pa. Superior Ct. 579. By the above definition of a privileged communication it is clear that privileged occasion of the utterance, without more, cannot justify it, except where the utterance itself or the circumstances connected therewith negative the presumption of malice. It was so held in Mulderig v. Wilkes-Barre Times, supra, in which Mr. Justice Stewart said: ''If there is that in the publication which furnishes a basis for reasonable

inference that malice was back of it, the burden remains with the party charged to establish either its truth or the probable ground for believing it true.'' Referring to the four tests of a privileged communication alluded to above, we are of one mind that the communication in this case satisfies none of them, except it be the manner in which it was made. Defendants did not undertake to prove that they had probable cause for believing that plaintiff was their delinquent debtor. From all that appears the communication was the result of a negligent mistake. Probable cause for belief excludes negligence: Com. v. Storey, 49 Pa. Superior Ct. 282, 308. Therefore the communication was not made upon reasonable and probable cause.

But there is another reason why it was not privileged. If one merchant writes to another asking for information as to the credit standing of a third person, the answer to such inquiry is deemed to be made on a proper occasion. If, instead of waiting for formal inquiries, members of an association of merchants agree to exchange such information voluntarily with one another, the situation is not altered, because this may be construed to amount to an outstanding inquiry on the part of each member of all others with the same force and effect as though a specific inquiry had been made in any given case. Where, however, the information is furnished pursuant to the terms of an agreement, the manifest purpose of which is to compel the payment of delinquent accounts, the privileged character of the communication is destroyed. The fundamental purpose of the association of which defendants were members was not only to protect its members against irresponsible debtors, but one of its avowed purposes was to compel prompt payment of debts by a species of boycott. While the legal effect of such a provision has not been declared by the appellate courts of this State, and the decisions of courts of other jurisdictions are not in harmony upon the sub-

ject, we are of opinion that the decided weight of authority supports the following statement of the law in Newell on Slander and Libel, 4th Ed., p. 441: "Nor are such communications privileged where they are made use of to blacklist delinquent persons with a view to coercing payment of debts, rather than protection of the members." In American and English Annotated Cases, Vol. 2, p. 57, the law is summarized from a number of cases there cited, and it is stated that "a communication by a member of a credit association to the other members, black-listing a person as a delinquent debtor, is libelous if it is made for the purpose of coercing the payment of a debt." This doctrine finds support in Weston v. Barnicoat, 175 Mass. 454, the opinion being written by Chief Justice HOLMES, now a Justice of the Supreme Court of the United States. That was an action for libel. It appeared that a member of a merchants' credit association, upon the plaintiff's declining to pay his claim, reported the plaintiff's name to the association, with the result that the name was placed upon a black list, as provided by the by-laws of the association, and this caused the discontinuance of business dealings with the plaintiff by members of the association. It was held that the trial judge could not have ruled that the communication was privileged as a matter of law; that the jury might have found that the whole organization was a mere scheme to oust the courts of their jurisdiction and to enforce colorable claims of the members by a boycott intended to take the place of legal process; that the by-laws expressed the terms on which the defendant saw fit to enter into a voluntary organization; that a man cannot justify a libel by proving that he has contracted to libel; and that a false statement of a kind manifestly hurtful to a man in his credit and business is not privileged because made in obedience to the requirements of a voluntary association gotten up for the purpose of compelling by a boycott the satisfaction

of its members' claims to the exclusion of a resort to the courts. While in that case the by-law provided that an absolute boycott should follow the reporting and listing of delinquent debtors, we think the case is not distinguishable in principle from this, in which the prohibition is only of sales on credit to a delinquent debtor until he has paid the debt. The cutting off of a merchant's credit is a potent method by which to coerce him to pay his overdue accounts. Nothing was decided in McIntire v. Weinert, 195 Pa. 52, that is not in harmony with the conclusion that this communication was not privileged. The only question before the Supreme Court in that case was whether the statement of claim was sufficient. The question whether the writing was a privileged communication was not decided. For the reasons stated, we are constrained to hold that the learned trial judge properly instructed the jury that there was no qualified privilege in the case. The motion for judgment for defendant notwithstanding the verdict was properly refused.

All of the assignments of error are overruled, and the judgment is affirmed.