**ALTOONA CLAY PRODUCTS, INC.,**
Appellant,

v.

**DUN & BRADSTREET, INC.**

v.

**C. R. GROVE, Joined as Plaintiff by**
**Court Order.**

**ALTOONA CLAY PRODUCTS, INC.**

v.

**DUN & BRADSTREET, INC.**

v.

**C. R. GROVE, Joined as Plaintiff by**
**Court Order, Appellant.**

Nos. 15709, 15710.

United States Court of Appeals
Third Circuit.

Argued May 17, 1966.

Decided Sept. 8, 1966.

Rehearing Denied Oct. 4, 1966.

See also, D.C. 37 F.R.D. 460.

John E. Evans, Jr., Pittsburgh, Pa. (Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellant Altoona Clay Products, Inc.

Joseph A. Williams, Pittsburgh, Pa., for appellant C. R. Grove.

Clyde A. Armstrong, Pittsburgh, Pa. (Edmund S. Ruffin, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and McLAUGHLIN and SMITH, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

The appeal in this diversity case requires us to decide several issues involving the Pennsylvania law of defamation. The legal questions, however, are far more simple than they would appear on their surface or the parties would have them.

The facts may be abbreviated for the purposes of this appeal. The plaintiff, Altoona Clay Products, Inc., is a Pennsylvania corporation and was engaged in business as a brick and tile broker. Being a sizable concern, its credit standing became the subject of analysis by the defendant, Dun & Bradstreet, Inc. From time to time the defendant issued credit reports concerning the plaintiff to its brick and tile suppliers and other creditors. Sometime in early January,

1963, Dun & Bradstreet requested one of its employees to up-date its credit report on the plaintiff. In his search of the records in the Blair County Courthouse, the employee discovered in the judgment index an unsatisfied judgment against Altoona Clay Products *Company* for $60,000.[1] On January 9, 1963, Dun & Bradstreet issued a credit report covering plaintiff. The report, which is reproduced below,[2] among other things listed in two columns items which would normally fall into the categories of assets or liabilities. The estimated total of assets was $101,200, while plaintiff's total liabilities were estimated at $86,500. Below these columns, however, appeared the following:

"A check of the Blair County Records on Jan 7 1963 revealed a judgment filed by the Altoona Central Bank #280 term 10–61 dated Nov 10 1961, for $60,000 A.S.B. Penal * * *."

There was, in fact, no judgment against the plaintiff corporation.

1. A check of the judgment itself would have revealed that it had been entered against "BRICK AND TILE SALES COMPANY, formerly THE ALTOONA CLAY PRODUCTS COMPANY." See note 6, infra.

2.

### DUN & BRADSTREET REPORT

2483 Jan. 1963

**RATING UNCHANGED**

| Sic | Name & Address | Started | Rating |
|---|---|---|---|
| | AD 16 Jan 9 1963 N | | |
| 50 98 | ALTOONA CLAY PRODUCTS, INC JOBBERS | 1959 | E 3½ |
| | 312 UNION AVENUE | | |
| | ALTOONA PA BLAIR COUNTY | | |

**TRADE** On Oct 19 1962 one supplier reports extending high credit of $15,500; owes $7,300; $5,600 past due; terms 3-10-25 net 30; prompt to slow payments, sold for over three years to 10-62.

**CONDITION** On Jan 7 1963 officers absent and office secretary declined all information. Outside sources estimated:

| | | | |
|---|---|---|---|
| Cash | $ 4,200 | Accts Pay | $35,000 |
| Accts Rec | 77,000 | Notes Pay | 28,000 |
| Mdse | 11,000 | Owe bank | 8,000 |
| Fixt & Equip | 9,000 | Accruals & Taxes | 5,000 |
| | | Mtge | 10,500 |

Volume for 1962 comparable to that of the previous year. Receivables heavy and slow turning and limit cash funds.

A check of the Blair County Records on Jan 7 1963 revealed a judgment filed by the Altoona Central Bank #280 term 10-61 dated Nov 10 1961, for $60,000 A.S.B. Penal also unsatisfied was a secured transaction filed by the First National Bank of Altoona dated June 2, 1962 #14054 covering, past, present and future accounts receivables.

Public records show mortgage amounting $10,800 entered by First National Bank.

1-9 (65 563) (18)

**PLEASE NOTE WHETHER NAME, BUSINESS AND STREET ADDRESS CORRESPOND WITH YOUR INQUIRY.**

The foregoing report is furnished, at your request, under your Subscription Contract, in STRICT CONFIDENCE, by DUN & BRADSTREET, INC. as your agents and employees, for your exclusive use as an aid in determining the advisability of granting credit or insurance, and for no other purpose. DUN & BRADSTREET, INC. does not guarantee the correctness of the information contained herein and shall not be liable for any loss or injury caused by the neglect or other act or failure to act on the part of said company, its officers, agents or employees, in procuring, collecting or communicating said information.

9R2-6 (9–61)

Plaintiff brought suit against the defendant, alleging that the circulation of this report to its suppliers caused them to restrict plaintiff's credit to such an extent that plaintiff suffered great financial loss. The complaint incorporated substantially the same quote as appears above; however, the entire report was made part of the answer. After the parties had completed extensive discovery, the defendant moved for summary judgment inter alia on the grounds that the alleged libel was a libel per quod and required the pleading of special damages and that plaintiff had failed to so plead. The district court found that the alleged libel was a libel per quod but held that plaintiff's pleading was sufficient.[3]

On the eve of trial, plaintiff's counsel for the first time expressly indicated that his case turned, at least in part, on the theory that defendant's report had imputed insolvency to the plaintiff. Despite this new assertion, the district court adhered to its position that the alleged defamation was a libel per quod. Plaintiff's counsel was prohibited from mentioning "imputed insolvency" in his opening to the jury and from eliciting testimony along those lines.

 Prior to discussing the issues raised on this appeal, certain salient features of the law of defamation in general, and the law of Pennsylvania in particular, should be clarified. Perhaps an over-generalization of the case law in Pennsylvania is that it follows the Restatement of Torts, §§ 558 et seq. The Pennsylvania courts have unequivocally committed themselves to the Restatement's definition of defamatory communication:

> "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement, Torts § 559.

Cosgrove Studio & Camera Shop, Inc. v. Pane, 408 Pa. 314, 182 A.2d 751 (1962); Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A.2d 472 (1960). It is equally clear that Pennsylvania follows §§ 570 and 573 of the Restatement whereby publication of slanderous statements concerning one's business, trade or profession are made actionable per se, that is, they are actionable without proof of special harm. Fegley v. Morthimer, 204 Pa.Super. 54, 202 A.2d 125 (1964); Cosgrove Studio & Camera Shop, Inc. v. Pane, supra. "For obvious reasons, the presumption that words are defamatory arises much more readily in cases of libel than in cases of slander." Collins v. Dispatch Pub. Co., 152 Pa. 187, 25 A. 546, 547 (1893). This being so, this case does not require us to determine whether all libels are actionable per se in Pennsylvania.[4]

██ At this point, we must note a distinction which is most important. The determination of whether particular words are actionable without proof of special damages ("actionable per se") is without question a matter of state substantive law. Sweeney v. Philadel-

---

3. The district court opinion denying the motion for summary judgment appears in 37 F.R.D. at 460.

4. The libel per se—libel per quod distinction is presently the subject of a heated controversy in the American Law Institute. The dispute revolves about the proposed changes in § 569 of the Restatement of Torts, Tent.Draft No. 12, Restatement of the Law Second, Torts. The views of the opponents and protagonists of the change are respectively set forth in Eldredge, The Spurious Rule of Libel Per Quod, 79 Harv.L.Rev. 733 (1966),

and Prosser, More Libel Per Quod, 79 Harv.L.Rev. 1629 (1966). Mr. Eldredge states, at 743, that Pennsylvania adopted the Restatement position that all libels are actionable per se in McAndrew v. Scranton Republican Pub. Co., 165 Pa. Super. 276, 67 A.2d 730, rev'd on other grounds, 364 Pa. 504, 72 A.2d 780 (1950), whereas Dean Prosser, at 1632–1633, lists McAndrew as a case in which the defamation would have been actionable per se even if it had been slander. Our reasoning in this case is identical with that employed by Dean Prosser in his discussion of the McAndrew case.

phia Record Co., 126 F.2d 53 (C.A.3, 1942); Sweeney v. Schenectady Union Pub. Co., 122 F.2d 288 (C.A.2, 1941). Not to be confused with this determination is whether a particular publication is defamatory on its face ("defamatory per se," "libelous per se," or "slanderous per se"). This latter determination is strictly procedural and means only that an "innuendo" must be or need not be pleaded. The authorities tell us that these pleading requirements are ofttimes ridiculous and frequently result in injustice. McCormick, Damages § 113 at 417–419; Prosser, Torts § 92 at 79 et seq. (2d ed.). Since the Federal Rules greatly reduced the importance of technical pleading, we need only state that these technical rules must give way when they come in conflict with our simplified rules of pleading. Continental Collieries v. Shober, 130 F.2d 631 (C.A.3, 1942); see also Watson v. Cannon Shoe Co., 165 F.2d 311, 313 (C.A.5, 1948).

The pivotal issue on this appeal is whether the credit report issued by the defendant is actionable without proof of special damages. We have already noted that Pennsylvania treats slanderous words injurious to one's business or profession as actionable per se. Hartman Co. v. Hyman, 87 Pa.Super. 358, aff'd, 287 Pa. 78, 134 A. 486, 48 A.L.R. 567 (1926); Phillips v. Hoefer, 1 Pa. 62 (1845).

■ The criteria for determining when a publication is injurious to one's business is spelled out in Sarkees v. Warner-West Corp., 349 Pa. 365, 37 A.2d 544 (1944):

" * * * If this publication imputes insolvency, financial embarrassment, unworthiness of credit, or failure in business of the plaintiff, it would be libelous. Phillips v. Hoefer, 1 Pa. 62 * * *; Hayes v. Press Company, Limited, 127 Pa. 642, 18 A. 331, 5

L.R.A. 643 * * *; Will (National News Co.) v. Press Publishing Co., 309 Pa. 539, 164 A. 621." 349 Pa. at 367, 37 A.2d at 546.

Especially relevant to the facts presently before us is the case of Hartman Co. v. Hyman, supra. In that case, plaintiff's name was confused with that of another purchaser from produce dealers who were members of a mutual credit bureau. It had been reported by the defendants to the bureau that "J. Hartman" was indebted to them. The agency printed a notice which was circulated to all of its members informing them that plaintiff had not paid its account. As a result of this and the credit agency's rule that members should not sell on credit to a person so listed, plaintiff was unable to purchase produce on credit and was required to cease operations until his name was removed from the "black list." [5] Though the appellant had apparently raised no issue with regard to special damages, the court stated:

" * * * It is well settled in this State that when words are spoken of another which tend to injure him in his business or calling, they are slanderous per se and neither express malice nor special damage need be proved. [Citing cases.] Legal malice exists where a wrongful act is done intentionally. [Citing cases.] *That the slanderous words complained of by plaintiff tended to injure his business credit must be admitted.*" 87 Pa.Super. at 361–362 (Emphasis supplied.)

■ In light of the foregoing, the plaintiff's allegation that defendant had "erroneously" reported to plaintiff's creditors that a large judgment had been entered against it was actionable per se. The complaint clearly states that plaintiff's credit was injured as a result of the publication. In arriving at this conclusion we are not unmindful of the cases relied upon by the district court in hold-

5. Appellee maintains that the "black list" distinguishes *Hartman* from the present case. The fallacy in this reasoning is that it places a premium on form rather than substance. The alleged result of defendant's publication in this case is identical with that found by the Superior Court in the Hartman case.

ing that this libel was not actionable per se. We believe its reliance on McDonald v. Lee, 246 Pa. 253, 92 A. 135, L.R.A. 1916B, 915 (1914), and Shaines v. R. G. Dun & Co., 8 Pa.Dist. & Co.R. 597 (Phila. C.P., 1927), is misplaced.

The McDonald case is a clear illustration of Dean Prosser's criticism of "per se" labels in defamation cases. In that case, plaintiff brought suit against a physician who was responsible for placing his name on a list of patients who were slow in paying for medical services. The court first examined whether plaintiff had been injured by reason of the publication and concluded that he had not. The court then stated that the publication was not "libelous per se"; however, a subsequent sentence states that plaintiff's case could become "actionable" only upon allegation and proof of special damages. In summary, the court merely held that plaintiff had not been denied credit and, therefore, he was required to allege and prove special damages.

There is even less substance in the Shaines case. There, the plaintiff sought to recover for defendant's false publication that plaintiff had been sued for $500 for goods sold and delivered. He alleged that "by reason of said publication * * * divers persons with whom the plaintiff had dealings in his lawful art, trade and business refused * * * the plaintiff * * * [his] usual or customary terms, and * * * refused to sell goods and merchandise to the plaintiff, causing plaintiff great inconvenience and financial loss." Sustaining a demurrer to the complaint, the court stated:

" * * * There is nothing in the publication in the case at bar which suggests or intimates, or from which anyone reading it could infer, that the plaintiff did not pay his just debts, or that he was dishonest, embarrassed or insolvent." 8 Pa.Dist. & Co.R. at 598.

In light of the court's earlier statement that "any publication is libelous per se which falsely impeaches the credit of a merchant or trader by imputing to him failure or refusal to pay his just debts, or which imputes to him financial embarrassment, or dishonesty * * * [and that] in such cases, damage is presumed and need not be proved," it is apparent that its holding turned on the failure of the plaintiff to allege loss of its credit.

■ Appellant also contends that the report imputed insolvency to it, and thus, is actionable per se. The problem is both procedural and semantical. Appellee maintains that imputed insolvency requires the pleading of an innuendo under the law of Pennsylvania. It properly states that where the publication is not libelous per se (defamatory on its face), an innuendo must be pleaded. Its disjunctive argument would appear to be that if the credit report on its face impute insolvency to the plaintiff, plaintiff's failure to incorporate the report in its complaint precluded it from raising the issue of imputed insolvency at trial.

■ Since these positions are disjunctive, we must decide at the outset whether the credit report on its face imputes insolvency. There can be no doubt that this determination is one to be made by the court, for in the Cosgrove Studio case, discussed above, the Supreme Court of Pennsylvania noted:

" * * * Secondly, most important and crucial, the words are defamatory on their face. Clearly, the characteristics and dishonest conduct imputed in the advertisement *need no extrinsic proof of explanation*. In short, the words in themselves are defamatory and import the serious sense attributed to them." 408 Pa. at 319, 182 A.2d at 753. (Emphasis supplied.)

We read the report as not only imputing insolvency but demonstrating it: plaintiff's estimated liabilities (the liabilities column plus the $60,000 judgment) are reported as far exceeding its estimated

assets. The report is, therefore, defamatory on its face.

We must now consider whether plaintiff's failure to attach a copy of the report or recite it in its entirety was a fatal defect in its pleadings. At this juncture, however, we must note that plaintiff in its complaint identified the report and thereby incorporated it by reference.

The decision of the district court to prohibit discussion of and testimony concerning imputed insolvency cannot be considered out of context. It was not made on a motion for judgment on the pleadings under Rule 12(c); it was made after the parties had made full use of the discovery procedure, and the court had before it not only plaintiff's complaint but also defendant's answer which included a copy of the report. The court also had before it the discovery proceedings which are replete with references to the plaintiff's assets and liabilities and how recipients of the reports reacted to plaintiff's asset-liability ratio after they were informed that an unsatisfied $60,000 judgment had been entered against the plaintiff.

Under these circumstances and upon consideration of the liberalized pleadings effectuated by the Federal Rules, we hold that plaintiff's failure to attach to its complaint a copy of the report could not preclude it from arguing that the report demonstrated insolvency, nor can we perceive any prejudice to the defendant by plaintiff's belated assertion of imputed insolvency. See Beckwith v. United States, 293 F.2d 471, 473 (C.A.5, 1961).

The publication in question being defamatory on its face and of such a nature that proof of special damages is unnecessary, the plaintiff is entitled to recover unless the defendant can establish either the defense of truth or privilege. Cosgrove Studio & Camera Shop, Inc. v. Pane, 408 Pa. at 317, 182 A.2d at 753.

There is no question before us concerning the issue of truth; [6] however, the appellee does maintain that the publication in question is privileged, and therefore the district court's judgment on its behalf [7] should be affirmed. We agree that publications such as that presently before us are privileged communications under the law of Pennsylvania. Williams v. Kroger Grocery & Baking Co., 337 Pa. 17, 10 A.2d 8 (1940), citing Restatement, Torts § 595; J. Hartman & Co. v. Hyman, 287 Pa. 78, 134 A. 486 (1926), affirming 87 Pa. Super. 358. The privilege, however, is conditional or defeasible. Diamond v. Krasnow, 136 Pa.Super. 68, 7 A.2d 65 (1939); J. Hartman & Co. v. Hyman, supra. The Pennsylvania courts have been most explicit in establishing guidelines for determining whether a particular communication is privileged:

"* * * 'It has often been said that a privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner, and based upon reasonable and probable cause. [Citing cases.] The immunity of a privileged communication is the exception, and he who relies upon an exception must prove all the facts necessary to bring himself within it. [Citing cases.] *Want of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege.* [Citing cases.]' The rule of those cases was reaffirmed in Bauswine v. Norristown Herald, Inc., 351 Pa. 634, 645, 41 A.2d 736 * * *." 356 Pa. 307, 315, 51 A.2d 775, 778— O'Donnell v. Philadelphia Record Co.,

---

**6.** Defendant's defense of truth appears to rest on its contention that there is an identity of ownership between the former Altoona Clay Products Company, presently named Brick Tile Sales Company, and the plaintiff.

**7.** The district court's opinion denying plaintiff's motion for a new trial is reported at 246 F.Supp. 419.

779 (1947), quoting from J. Hartman & Co. v. Hyman, supra. (Emphasis supplied.) See also Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 178, 191 A.2d 662, 668 (1963); Rankin v. Phillippe, 206 Pa.Super. 27, 211 A.2d 56 (1965); Restatement Second, Torts § 600, Note to Clause (b), Tent. Draft No. 12.

An essential aspect of plaintiff's case in rebuttal to the defense of privilege is that defendant's employee was negligent in failing to consult the records themselves and in relying solely on the Judgment Index in reporting that a $60,000 judgment had been entered against plaintiff. Montgomery v. Dennison, 363 Pa. 255, 261–265, 69 A.2d 520, 524–525 (1949), citing Restatement, Torts § 613. Within the context of the law stated above, this presents a question for the jury, see McGaw v. Hamilton, 15 Pa. Super. 181 (1900), and cannot be decided here.

 One further matter requires mention. Since this case will be remanded for a new trial, we must point out that we cannot concur in the district court's conclusion that plaintiff's proof on the issue of damages was insufficient. Though plaintiff's proof was far from conclusive,[8] in light of the Pennsylvania cases, especially those cited by the district court, we believe it was sufficient for the jury's consideration. Cf. Dun & Bradstreet, Inc. v. Nicklaus, 340 F.2d 882 (C.A.8, 1965). We make this observation only because the Pennsylvania cases indicate that, like punitive damages, cf. Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A.2d 662 (1963), special damages are recoverable in addition to general damages in appropriate circumstances. Montgomery v. Dennison, 363 Pa. at 268 & n. 5, 69 A.2d at 527 & n. 5 (1949).

The judgment of the district court will be reversed and the cause remanded for disposition not inconsistent with this opinion.

8. We note in this regard that much of the testimony of Mr. Pegnetter, president of the plaintiff, was improperly excluded.