## Conroe *versus* Conroe and Wife.

*Filing of additional count, when within the discretion of the court.—General reputation for chastity, when admissible in action for defamation.*

1. In an action for slander, a new count may be added to the declaration, when it can be regarded as an amendment at common law, it is therefore in the discretion of the court, and the allowance of the amendment is not error, especially where it is not clear that the added count introduces a new cause of action, or is anything more than a new form or statement of the slander averred in the former counts.

2. Where the averment of the declaration was the imputation by the defendant to the plaintiff of general unchastity, and the general issue alone was pleaded, evidence may be offered in mitigation of damages, that the general reputation of the plaintiff for chastity was bad.

ERROR to the Common Pleas of *Warren county*.

This was an action on the case by William Conroe and Susan his wife against James P. Conroe, for defamation of character. The plaintiff's declaration was filed March 22d 1863, and contained three counts. The first, after reciting that said "Susan Conroe had not ever been guilty, nor, until the committing the several grievances by defendant, been suspected to have been guilty, of the offences and misconduct as hereinafter stated to have been charged and imputed to her," charged the defendant with saying "she, Susan Conroe meaning, is a damned old whore." Also with saying that she, the said Susan Conroe meaning, "is a damned old whore," thereby and "then and there meaning that said plaintiff, Susan meaning, had been guilty of adultery and fornication."

The second count charged defendant with saying "that she, the said Susan Conroe meaning, is a damned old whore," and always had the name of the Mud Creek whore, "and any man can take her out at any time for two shillings, and by God, I said, defendant meaning, I can prove it," meaning "that said Susan Conroe was a common prostitute, that the said Susan would prostitute herself for twenty-five cents, and would commit adultery for the sum of twenty-five cents or two shillings."

The third count charged him with saying that "said Susan Conroe was and is a public woman, and that the said Susan was and is a public woman, and that she, the said plaintiff meaning, was a public woman at Mud Creek, and did at Mud Creek commit acts of fornication and adultery," concluding "to the damage of the plaintiff $5000."

After plaintiffs had ruled defendants to plead, and had ruled the case out before arbitrators, they were permitted to file an additional count, which charges defendant with saying that "she, Susan Conroe meaning, is a God-damned public woman, and he could prove it, and a God-damned public whore, and that any

[Conroe v. Conroe and Wife.]

person could do as they pleased with her for a quarter of a dollar," *or any dog!* "Then and there meaning that she said Susan Conroe was a public whore, and would commit fornication at any time with any man or *buggery with any dog* for twenty-five cents, and that he said defendant could prove that she, said Susan meaning, had and would commit adultery or buggery for twenty-five cents, to the further damage of said plaintiff of $5000."

The defendant objected to the filing of this additional count, for the reason that it did not set out in a different manner the complaint set forth in the *narr.* first filed, but contained another cause of action or injury, but the court overruled the objection.

On the trial of the case, after the plaintiff had closed her case, the defendant offered to show in mitigation of damages by the following depositions of J. L. Simpson, [that "Susan Conroe's reputation for chastity was bad, and that she had a general reputation as to chastity; that he had seen a pedlar's wagon stand at her door three or four days at a time; had heard of men being caught in bed with her; her reputation as to chastity was bad, and very bad."]

The deposition of Joseph Clark that her general reputation was bad, [and her reputation for chastity was bad.]

By Truman Russell that "her general reputation was bad, [and that there was a pedlar by the name of Tibbets used to go there. Have heard her called a whore."]

By Henry Walker that "her general reputation was bad. That [Susan Conroe kept Tibbets a good deal; sometimes would stay a week at a time, and no other person about the house but Tibbets and herself. It was said that others used to go there."]

And by Henry Hunt, who testified that "her general reputation was bad for a few years before she married Conroe, [and that her reputation for chastity was bad."] The court excluded all of the evidence except that part relating to the general reputation of Susan Conroe, which is printed above in brackets.

Under the ruling and charge of the court below there was a verdict and judgment in favour of the plaintiff. Whereupon this writ was sued out, and the decision of the court below in permitting plaintiff to file the additional count above mentioned, and the rejection of the testimony as to the general character of Susan Conroe for chastity, were assigned for error.

*Wetmore & Clark,* for plaintiff in error.

*B. W. Lacy,* for defendants in error.

The opinion of the court was delivered, April 2d 1864, by

STRONG, J.—It was not erroneous to allow the amendment to the declaration of which the plaintiff in error complains. It is not clear that the added count introduced a new cause of action, or anything more than a new form of statement of the same slander averred in the first counts. Besides, the amendment may be regarded as one at common law, and not made under the Act of 1806. If so, it was within the discretion of the court below: Tryon *v.* Miller, 1 Whart. 17, 18.

The second assignment of error has more foundation. The case was an action for slander, and the averments of the declaration were that the defendant had imputed unchastity to the plaintiff, not by a charge of a particular act of lewdness, but by calling her in general terms, a whore. The general issue alone was pleaded, and under it the defendant offered in mitigation of damages, evidence to prove that the general reputation of the plaintiff for chastity was bad. This the court excluded. The general reputation of the plaintiff was allowed to be given in evidence, but not her general reputation for chastity. We have not the rejected depositions before us. What was rejected we gather only from the bill of exceptions. Looking to that, we must assume the court overruled not reports of single acts of incontinency, not occasional rumours of want of chasity in the plaintiff, but proof that her general reputation was that of an unchaste woman. Without undertaking to review at length the numerous decisions made, especially in the English, Massachusetts, and New York courts, upon the question how far, in actions of slander, the defendant may, under the plea of not guilty, attack the character of the plaintiff, it may be safely said to be almost everywhere settled, that evidence of general bad reputation is admissible in mitigation of damages. Whether reputation in that department of character which the alleged slander has assailed may be given in evidence, is perhaps not so well established by authority. In many of the cases the question has been embarrassed by the pleadings. There has been no plea of not guilty, or it has been accompanied with a plea or notice of justification. Thus in Root *v.* King, 7 Cowen 613, upon which the defendant in error so largely relies, and which was cited by Judge Coulter in Steinman *v.* McWilliams, 6 Barr 170, the defendant admitted the publication of the libel, and undertook to justify.

There it was held that public report of a fact stated in a libel cannot be given in evidence after the defendant has pleaded or given notice of justification; and that such plea or notice precludes all other evidence in mere mitigation; but in delivering the opinion, Chief Justice Savage said: "Had such evidence been offered under the general issue alone, with a view to show the court and jury there was no malice in the defendants, because in

reality they only repeated what every one else did, and what the plaintiff's conduct led them to believe was the truth, a very different question would have been presented. They would then have brought themselves within some of the recent English cases, which now have no application to this case, because the question arose under a totally different state of pleadings." In our own case of Steinman v. McWilliams, 6 Barr 170, the defendant pleaded the general issue, and justification. There the averment in the declaration was that the defendant had charged the plaintiff with perjury in a certain judicial proceeding, and it was held that evidence of the general character of the plaintiff *for truth and veracity* was not admissible. In examining that case the state of the pleadings should be observed, as also the fact that the slander alleged was the imputation of a single act of crime, and the fact that the reputation attempted to be proved was of want of truthfulness, not of habitual perjury. And the remarks of Judge Coulter should be considered as applicable to the case before him. So in Long v. Brougham, 5 Watts 439, the alleged slander was a charge of a single instance of crime, and the defendant was not permitted to give in evidence the general prevalence of reports years before, that the plaintiff had been guilty of a similar crime. The decision was put on the peculiar circumstances of the case. The defendant, before the utterance of the slander, admitted that the previous imputation was unfounded, and for this reason he was not allowed to protect himself under it. But Judge Gibson conceded that the existence of suspicions is admissible in some cases to enable the jury to estimate the injury done to the plaintiff's character. And why, upon principle, should not general reputation of want of good character in the particular in which it has been assailed, be receivable in evidence? The plaintiff seeks to recover compensation for the loss of her character, not her reputation for truth, integrity, sobriety, or industry, but her reputation for chastity. That she put in issue. The law presumed it good, and therefore valuable to her. If that was not damaged, she has sustained no injury, and is entitled to no compensation. If her reputation for chastity was bad before the slander of the defendant was uttered, can it be said that the injury sustained by her from the wrong of the defendant is the same as it would have been if her reputation for chastity had been untarnished? Is a defendant who has destroyed a plaintiff's paste jewelry to be held to the same measure of compensation as he who has destroyed diamonds? And even if we turn from the compensation to which the plaintiff is entitled, and inquire after the malice of the defendant, it is impossible to say that he who repeats a slander that was in everybody's mouth, manifests the same depravity as does he who coins an accusation never before made. The argument that admits the propriety of receiving evidence of the general

[Conroe *v.* Conroe and Wife.]

character of the plaintiff as a whole, but denies the admissibility of evidence affecting the plaintiff's reputation in that aspect in which the slander has assailed it, loses sight of the fact that character, or, more properly, reputation, is complex.   It is made up of many things.   A man may have many virtues, and consequently a good general reputation, and yet be notorious for a single vice.   If his virtues be called in question it is an injury, but if only his vice be asserted his injury is less.   It is already said the plaintiff in this case has put her reputation for chastity in issue.   Her averment is not that her reputation for all the virtues which go to make up good character was fair, but that her reputation for chastity was sound.   And it is that, she complains, has been taken from her.   Its real value was therefore a proper subject of inquiry.   It would be strange if the defendant may not show it to have been worthless.   Such is the rule as laid down in 2 Starkie on Slander 88.

The court therefore erred in rejecting evidence to prove that the general character of the plaintiff for chastity was bad before the defendant uttered his slander.   Of course such evidence should be confined to general reputation.   Evidence of reports of particular acts of incontinency is inadmissible.

Judgment reversed, and a *venire de novo* awarded.