# William T. McIntyre, Appellant, *v.* William Weinert.

*Libel—Function of the inducement.*

It is the office of the inducement to narrate the extrinsic circumstances which, coupled with the language published, affects its construction and renders it actionable, where, standing alone and not thus explained, the language would appear not to affect the party injuriously.

*Libel—Business credit—Trade libel.*

Any written words are libelous which impeach the credit of any merchant or trader by imputing to him business embarrassment, either past, present or future, or which impute to him dishonesty in the conduct of his business, or which in any other manner are prejudicial to him in the way of his employment or trade.

*Libel—Privileged communication.*

Where the defendant in a libel suit, and the person to whom the alleged libel was addressed, have corresponding interests in the subject-matter of the communication, it may be privileged; but such privilege will not avail the defendant, if under the evidence, the jury find that he was actuated by malice in making the communication.

*Libel—Privilege—Demurrer.*

Where a statement in a libel suit avers malice, it will not avail the defendant on demurrer that the communication was privileged.

*Libel—Trade libel—Special damage.*

In actions of libel, or where words are spoken of another in the way of his profession or trade, special damage need not be averred in the statement.

*Libel—Trade libel—Wholesale dealers' association.*

A statement in libel is not demurrable, which avers that the defendant, a wholesale dealer, maliciously sent to the wholesale dealers' association, of which he was a member, a written communication to the effect that the plaintiff had not paid his account, and that in consequence plaintiff's name was placed on the black list of the association, as a result of which he could not obtain supplies even for cash from any members of the association.

Argued Jan. 18, 1900.   Appeal, No. 320, Jan. T., 1899, by plaintiff, from order of C. P. No. 1, Phila. Co., March T., 1899, No. 320, sustaining demurrer.   Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.   Reversed.

Trespass for libel.

The statement averred that the defendant was a member of an association of wholesale produce dealers known as the Phil-

adelphia Produce Credit and Collection Bureau, and that about March 1, 1899, defendant sent to various members of said association the following communication :

"For Exclusive Use of Philadelphia Produce Credit and Collection Bureau.

### REPORT OF INDEBTEDNESS.      FORM B.

PHILADELPHIA, March 1, 1899.

*To the Philadelphia Produce Credit and Collection Bureau :*

You are hereby notified that the parties named below have failed to pay their accounts, which were due and payable with us at 12 o'clock noon this Wednesday, March 1, 1899.

| NAME | ADDRESS | AMOUNT |
|---|---|---|
| Wm. T. McIntyre | 38th & Wallace Sts. | $86.14 |
| | | |
| | | |

Yours truly,
WM. WEINERT & CO.

Plaintiff denied that he was indebted, and averred that the communication had been maliciously sent in order to coerce him into paying the amount claimed. He also averred that by reason of the communication he was refused supplies by all of the members of the association either for credit or cash.

The defendant demurred to the statement. The court sustained the demurrer.

*Error assigned* was the judgment of the court.

*E. Spencer Miller* and *F. B. Bracken,* for appellant.—We submit that successful scheming to close up the avenues of supply against defendant is actionable when, as here, it is done with the deliberate purpose to injure the plaintiff's business, and thereby coerce him into paying a sum of money.

The present case is not distinguishable in principle from the

cases of Flood v. Jackson (1895), L. R. 2 Q. B. 21, and Bowen v. Hall, L. R. 6 Q. B. Div. 333, wherein the malice of the act, in itself not unlawful, was stated by the court to be a good ground of action where injury resulted. See also Lucke v. Clothing Cutters' Assembly, K. of L., 77 Md. 396 ; Jackson v. Stanfield, 36 N. E. Rep. 345, and Moores & Co. v. Bricklayers Union, 7 Ry. & Corporation Law Jour. 108.

Weinert's personal wrong doing is not less, because he set into motion a perfect and finished organization upon this malicious design against McIntyre, than it would have been if he had formed such an organization for that original purpose. If Weinert and the other members of the collection bureau would have been liable criminally, they are liable to McIntyre in a civil proceeding such as the present one : Cote v. Murphy, 159 Pa. 420 ; Wildee v. McKee, 111 Pa. 335.

In the case of Mattison v. Ry. Co., 3 Ohio Decisions (1895), 526, the plaintiff was made the victim of a black list as in the present case and he was held entitled to recover : Bratt v. Swift, 75 N. W. Rep. 411.

The notice of plaintiff's falsely alleged indebtedness which the defendant caused to be sent to the members of the association, and the publication of plaintiff's name in the debtor's list or black list were both libelous publications per se : Hood v. Palm, 8 Pa. 237 ; Wildee v. McKee, 111 Pa. 335 ; Lewis & Herrick v. Chapman, 19 Barb. 252 ; Green v. Button, 2 C. M. & R. 707 ; Wren v. Weild, L. R. 4 Q. B. 730 ; Addison on Torts, p. 6 ; Price v. Conway, 134 Pa. 340.

Disregarding all other elements of special damage alleged, the single allegation that in consequence of the false statement of defendant, the plaintiff was refused credit by a dealer who had theretofore sold him on credit, is sufficient as an allegation of special damage : Brown v. Smith, 13 Common Bench, 596 ; King v. Watts, 8 C. & P. 614.

*John G. Johnson,* with him *Henry R. Edmunds,* for appellee. —The objects of the association were legal, and no right of action resulted to the appellant from what was done by it : Mogul Steamship Co. v. McGregor, L. R. App. Cas. (1892), 25.

The appellant has quoted the case of Flood v. Jackson, 1895, L. R. 2 Q. B. D. 21, and Bowen v. Hall, L. R. 6 Q. B. D. 333, and

has made an extensive citation from what was said by Lord Esher, the master of the rolls, in the case of Bowen v. Hall. He also quotes the Ohio case of Moores & Co. v. Bricklayers' Union, which was rested exclusively upon the decision which was made in the English case of Bowen v. Hall. Unfortunately, he has failed to note the fact that these decisions, so far as they help him, have been overruled in England, and that the law has been settled by the House of Lords in the recent case of Allen v. Flood (reversing Flood v. Jackson), L. R. 23 App. Cas. (1898), p. 1.

Any man (unless under contract obligation or unless his employment charges him with some public duty) has a right to refuse to work for or deal with any man or class of men, as he sees fit; and this right which one man may exercise singly, any number may agree to exercise jointly : Bohn Mfg. Co. v. Hollis, 55 N. W. Repr. 1119.

In Cote v. Murphy, 159 Pa. 420, this court dealt with the right of persons engaged in trade to protect themselves by combinations.

There were not sufficient averments of any improper conduct by the appellee which justified the action : Stitzell v. Reynolds, 58 Pa. 490 ; Pittsburg, etc., Ry. Co. v. McCurdy, 114 Pa. 554.

OPINION BY MR. JUSTICE MESTREZAT, March 5, 1900 :

The facts of the case, as disclosed by the statement, are briefly as follows : The defendant and other wholesale produce dealers in the city of Philadelphia entered into an unlawful combination, known as the Philadelphia Produce Credit and Collection Bureau, and were in a conspiracy with each other to prevent the obtaining of produce by any retail dealer in said city, who might be in debt, or alleged to be in debt, to any member of said combination or association, and thereby to injure and destroy his business and unlawfully compel him to pay such debt. Under the rules of said association the secretary was required to enter upon a debtors' or " black list " the name of any retail produce dealer who might be reported to him as indebted to any member of said association, and to distribute copies of said list among the members thereof. The retail dealers whose names appear on the list are regarded by the trade generally as dishonest in their business practices and unworthy of credit, and

the members of the association are prohibited from selling, and refuse to sell to any person whose name appears on the debtors' list.

The plaintiff was a retail produce dealer in the city of Philadelphia and was almost wholly dependent for his supplies of produce upon the defendant and other members of the association. He was able and willing to pay for his supplies and offered to purchase them for cash from the members of the association.

The defendant and other members of the association conspired together with the intention of unlawfully coercing the plaintiff to pay the defendant $86.14, falsely alleged to be owing by him to defendant, and with the further intention of injuring the plaintiff, destroying his business and undermining his credit. On March 1, 1899, the defendant wrote the association that the plaintiff had failed to pay him the sum named, after it was due, and the association entered the plaintiff's name on the debtors' list, which was circulated among its members and other persons. A copy of the letter is set out at length in the statement. This action on the part of the defendant prevented the plaintiff from obtaining supplies, either on credit or for cash, from the members of the association, and thereby injured the plaintiff in his credit and reputation as a retail produce dealer, and in his business and trade. This is averred to have been done by the defendant falsely and maliciously and with the aforesaid intention and effect upon the plaintiff and his business.

The defendant demurred to the statement, and hence all relevant matters contained therein must be taken to be true. The sufficiency of the statement is the only question before us.

In support of his demurrer it is claimed by the defendant that the writing is not libelous. Standing alone, possibly that may be true. But in construing this writing we must consider not only the writing itself but the inducement laid in the statement. "It is the office of the inducement to narrate the extrinsic circumstances, which, coupled with the language published, affects its construction and renders it actionable; where standing alone and not thus explained, the language would appear not to affect him injuriously:" Townshend on Slander and Libel, sec. 308. The publication complained of, construed in the light of the extrinsic matters averred in the statement,

clearly tends to injure the plaintiff in his business as a retail produce dealer, and is, therefore, actionable. " Any written words are libelous which impeach the credit of any merchant or trader by imputing to him . . . . even embarrassment, either past, present or future, or which impute to him . . . . dishonesty . . . . in the conduct of his business, or which in any other manner are prejudicial to him in the way of his employment or trade : " Odgers on Libel and Slander, p. 29.

The defendant further contends that the writing was a privileged communication. It is true that where the defendant and the person addressed have corresponding interests in the subject-matter of the communication, it may be privileged. This privilege, however, is not absolute. It will not avail the defendant if, under the evidence submitted, the jury find that he was actuated by malice in making the communication : Odgers on Libel and Slander, p. 220. The plaintiff avers that the writing was malicious, and on this demurrer, of course, the question cannot be determined, but the cause must be sent to a jury.

The defendant alleges as another ground for his demurrer that it does not appear that the plaintiff has suffered any special damage which can be recovered in this action. But in actions of libel, or where words are spoken of another in the way of his profession or trade, special damage need not be averred in the statement : Price v. Conway, 134 Pa. 340.

The judgment is reversed and a procedendo awarded.