## Will, Trading as National News Co., *v.* Press Publishing Co., Appellant.

Argued September 30, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*James G. Marks,* with him *Baker & Watts,* for appellant.—Publications not libelous per se are not actionable without proof of special damage: Weaver v. Phillips, 231 Pa. 219; Shaines v. R. G. Dun, 8 Pa. D. & C. 597.

A circular is not libelous per se unless injury is a necessary and proximate consequence, not merely probable: Pitts. A. & M. Ry. v. McCurdy, 114 Pa. 554.

Defendant's circular was at least qualifiedly privileged, and the presumption of malice was therefore overcome: Press Co. v. Stewart, 119 Pa. 584; McDonald v. Lee, 246 Pa. 253.

*Clyde A. Armstrong,* with him *B. H. Thompson,* for appellee.—Publications which impute dishonesty in business or refusal to pay debts to a business man are libelous per se: Hayes v. Press Co., 127 Pa. 642; Price v. Conway, 134 Pa. 340; Wood v. Boyle, 177 Pa. 620.

A qualifiedly privileged communication is one made not only upon a proper occasion, but also with a proper motive, in a proper manner, and based upon reasonable or probable cause: Conroy v. Pittsburgh Times, 139 Pa. 334; Wallace v. Jameson, 179 Pa. 98; Montgomery v. Printing Co., 229 Pa. 165.

OPINION BY MR. JUSTICE LINN, November 28, 1932:

This appeal is from judgment on a verdict in an action for libel. Plaintiff has resided in the Borough of New Kensington since 1893, and from 1915 to December, 1928, had been engaged, inter alia, in selling defendant's newspaper, The Press. He appears to have conducted a business relatively large,* employing a number of distributing newsboys and maintaining a number of newsstands; his principal store was in the business center of the borough; he not only supplied the borough, but also surrounding territory, in all, a population of "anywhere from fifty to seventy-five thousand, possibly more;" in addition to defendant's paper, he distributed and sold

---

* Some light on the amount of business done by plaintiff is shown by four checks showing payments made by plaintiff to defendant for The Press for the months of July to November, 1928, —varying in amounts from $747 to $784 a month.

other papers, one several times mentioned in the evidence being the Sun-Telegraph.

On December 28, 1928, defendant delivered copies of the libel to boys, some formerly in plaintiff's employ, and instructed them to deliver them in and about the territory in which plaintiff conducted his business. The document complained of is a single sheet of paper, measuring 8½ by 10½ inches, and is as follows:

THE PITTSBURGH PRESS
Boulevard of the Allies
Pittsburgh, Pa.

December 28, 1928

To the Public of New Kensington, Pa.

Several days ago Mr. Wills operating the National News Company in your town circularized from door to door a circular that the Pittsburgh Press had decided to take away his agency as distributor of our newspapers.

For the past several months we have been unable to satisfactorily clean up Mr. Wills' account and on Monday, December 17th we called Mr. Wills on the telephone and explained to him that we desired to clean up his account immediately as it was coming near the end of the year and it would be necessary for us to have his account on an even basis.

Mr. Wills refused to give any satisfactory reason for permitting his account to be in the condition it was, and we asked him to come to the office of the Press the next day and discuss this matter. He informed us that he would not come to this office, neither would he pay the account and we could take any action we desired as he flatly refused to give our account any consideration.

I think you will agree that it is quite impossible for the Pittsburgh Press to ship to any newsdealer papers day in and day out without receiving a satisfactory settlement of our bills. We have every reason to believe that the people of New Kensington pay their bills promptly, and we can not see any reason why Mr. Wills

can not take care of his bills in the same manner. It is not our policy to deprive any distributor of his business so long as he renders service to the people in his territory and takes care of his bills properly.

Very truly yours,

The Pittsburgh Press

P. S. In the event you do not receive your paper regularly 'phone the Press Branch New Kensington 2386.

One of these boys, aged nineteen, testified "...... first, they [copies of the libel] were in the papers, and, besides those, we were given a bundle to pass out, especially to the Sun-Tele [Sun-Telegraph] customers" of plaintiff. This witness was also instructed "to put [the libel] in [plaintiff's] door." He said that he was given "a hundred or more;" "I was told any time I met Sun-Tele boys delivering papers [for plaintiff's account] to either start a fight with them or upset their papers and prevent them from delivering them to their customers." "Between eight and ten" boys were so employed to distribute the libel. Witnesses who had received the libel, testified that they heard discussions in the community about it in its relation to plaintiff; some, engaged in business, said numerous copies were left in their shops for distribution.

Defendant pleaded not guilty, and justification, and averred that the statements made were true, and privileged. The learned trial judge properly ruled that the document was libelous per se; that no privilege was shown; that plaintiff was entitled, at least, to nominal damages (an instruction prejudicial to plaintiff and more favorable than defendant was entitled to: Leppley v. Smith, 91 Pa. Superior Ct. 117, 120 et seq.), but that the jury could award substantial damages including a reasonable amount as punishment.

Appellant's principal contention here is that the publication was privileged and that there is no proof of malice; it is also said that the verdict is excessive.

We lay aside altogether the first paragraph of the document distributed, without considering what its effect in the case might be if the facts were shown, because there is no evidence in the record that plaintiff distributed any circular; defendant's statement that he did so, is a self-serving declaration that, by itself, amounts to nothing in this record. The next two paragraphs announce that plaintiff has refused to pay his debts; has even refused to consider the subject in spite of several months' effort on the part of defendant to have him do so; the last paragraph reflects on the refusal by comparison with the prompt payment of debts by "the people of New Kensington."

We must consider the words as they would ordinarily be understood by those who received them in the circumstances already described: Ry. Co. v. McCurdy, 114 Pa. 554, 558, 8 A. 230. Counsel for appellee very properly says in his brief that they "accuse a business man of deliberately and flatly refusing to pay an account, of receiving something of value day in and day out without making settlement therefor, of failing to take care of his bills promptly, of being different from other people in his community who pay their bills promptly and of failure to render service to his customers......" Such accusation is libelous per se: Phillips v. Hoefer, 1 Pa. 62; Hayes v. Press Co., 127 Pa. 642, 18 A. 331; Mengel v. Reading Eagle Co., 241 Pa. 367, 88 A. 660.

Plaintiff testified, and there is no contradiction of it, that in August, 1928, defendant's representative and he together examined his accounts concerning a balance of $111.37 which defendant claimed to be due, and that after the examination, it was agreed that the amount due was only $15.76. Plaintiff's cancelled check showing payment of that account is in the record. As defendant offered no evidence that plaintiff refused to pay his bills, the jury doubtless concluded, from plaintiff's evidence, that defendant's statement was false.

The publication, in the circumstances, is libelous per se; it imputes dishonesty to plaintiff in the conduct of his business. "Any written words are libelous which impeach credit of any merchant or trader by imputing to him......even embarrassment, either past, present or future, or which impute to him.....dishonesty..... in the conduct of his business, or which in any other manner are prejudicial to him in the way of his employment or trade:" McIntyre v. Weinert, 195 Pa. 52, 57, 45 A. 666, quoting from Odger's on Libel & Slander, page 29. The record is destitute of anything in mitigation. We are not persuaded that the learned court below erred in holding that the verdict was not excessive. The character of plaintiff's business and the manner of the distribution of the libel have been stated. From such libel damage is presumed; courts take judicial notice that damage follows because that is the common experience of mankind. Defendant also failed to prove its plea of justification. "That the unsustained plea of justification afforded such evidence of actual malice as should enhance the damages, is equally well supported by authority:" Gorman v. Sutton, 32 Pa. 247, 249. See, too, Clark v. North American Co., 203 Pa. 346, 354, 53 A. 237. The case was tried twice, and while the verdict in the first trial was less than in the second, the new trial was obtained on defendant's motion; but, instead of withdrawing the plea after the first trial, it remained part of the issue in the second; that circumstance is also to be considered. We can not say there was abuse of discretion.

Judgment affirmed.