Bausewine *v.* Norristown Herald, Inc., Appellant.

Argued January 9, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused April 12, 1945.

*William F. Quinlan,* with him *Fox & McTighe,* for appellant.

*Victor J. Roberts,* for appellee.

OPINION BY MR. JUSTICE JONES, March 19, 1945:

These appeals are from judgments for the plaintiff in two separate suits for libel. The cases were consolidated for trial and both appeals raise the same legal questions. Originally, the defendants were Norristown Herald, Inc., which publishes the Times Herald, a daily newspaper, of Norristown, Pennsylvania, and Ralph Beaver Strassburger, the president and substantial owner of that company. The defendants were jointly impleaded on the theory that they were jointly responsible for certain allegedly libelous writings carried by the Times Herald.

At a former trial the jury returned verdicts for the plaintiff in the sums of $12,500 against Strassburger and $25,000 against Norristown Herald, Inc., in each case, for a total of $75,000. The learned trial judge, deeming the verdicts excessive and not correctable by way of remittiturs (being for different sums against alleged joint tort-feasors), granted the defendants' motions for a new trial. The plaintiff thereupon discontinued as to Strassburger in each case without objection from the remaining defendant. At the new trial, the jury returned verdicts in the plaintiff's favor for $15,000 in the case at No. 36 September Term 1942, and for $35,000 in the case at No.

83 September Term 1942. The defendant filed motions for judgments n. o. v. and for a new trial which the learned court below denied save that it conditioned its refusal of the motions for new trial upon the plaintiff's filing remittiturs in prescribed amounts within a specified time. The plaintiff duly filed the remittiturs and judgments were entered on the verdicts, as thus reduced, in the sums, respectively, of $3,750 in the case at No. 36 below and $8,750 in the case at No. 83. From the judgments so entered the defendant took the present appeals.

In support of its motions for judgment n. o. v. the appellant contends that (1) the plaintiff's discontinuance as to defendant Strassburger, which came after the statute of limitations had run, served to deprive the remaining defendant of its right to contribution by the other alleged joint tort-feasor, (2) the discontinuance worked a release of Strassburger's liability which operated to relieve the remaining defendant also, and (3) the learned trial judge erred in refusing to direct verdicts for the defendant in accordance with its requests which it based on the ground that the writings complained of were neither libelous nor evidence of libel. The latter point is also covered by assignments which impute trial error in the court's admitting the writings in evidence over the defendant's objections.

Under the Act of May 4, 1852, P. L. 574 §2 (12 PS §533) as construed by the Act of April 12, 1858, P. L. 243 §1 (12 PS §534) it was the plaintiff's right to discontinue as to one of the defendants even though they were alleged to be joint tort-feasors. See *Booth v. Dorsey,* 202 Pa. 381, 385-386, 51 A. 993. In that case, the plaintiff took a voluntary nonsuit as to two of three alleged joint tort-feasors. As to the legal justification for the elimination of all but one of the parties defendant, this Court said in the *Booth* case that "The mistake for which an amendment should be allowed [under the statutes] may be either of fact or law, and when it is made to appear, it is the duty of the court to correct it:" (citing *Kaylor v. Shaffner,* 24 Pa. 489).

Here, Norristown Herald, Inc., was the master and Strassburger, its servant. With the defendants in that relationship, it was a mistake of law for the plaintiff to treat them as joint tort-feasors. Their torts were several: cf. *East Broad Top Transit Company v. Flood*, 326 Pa. 353, 356, 192 A. 401. Notwithstanding that all parties defendant may now be brought upon the record regardless of whether their liability is joint or several (see *Williams v. Kozlowski*, 313 Pa. 219, 226, 169 A. 148) it is a mistake none the less to sue, as jointly liable, alleged tort-feasors, whose liability, if any, must necessarily be several. The mistake was evident on the face of the pleadings. A formal affidavit, pointing out the error, would not have added anything to what otherwise clearly appeared. Such an affidavit was therefore unnecessary, especially, when none was required by the court as a basis for the discontinuance. In the absence of any objection by the defendant to the entry of the discontinuance or any motion to strike it off, the court's leave to the plaintiff to discontinue is to be presumed. *Shapiro v. Philadelphia*, 306 Pa. 216, 220-21, 159 A. 29; *Commonwealth v. Magee*, 224 Pa. 166, 168, 73 A. 346.

Even if the torts alleged were joint, the plaintiff could have discontinued at trial as to one of the two defendants and have proceeded against the other without any requirement that he prove joint torts as a prerequisite to fastening liability upon the remaining defendant for the wrongs alleged and proven. Such has been the rule since the Act of June 29, 1923, P. L. 981 (12 PS §685). See *Gable v. Yellow Cab Co.*, 300 Pa. 37, 38, 150 A. 162; and *Cleary v. Quaker City Cab Co.*, 285 Pa. 241, 245, 246, 132 A. 185. It can hardly be suggested, therefore, that the mere discontinuance served to introduce a new cause of action. Nor was a new cause of action in fact introduced by reason of the amendment. The wrongs alleged remained precisely as the plaintiff had originally pleaded them. Consequently, the fact that the statute of limitations had run at the time of the

discontinuance was of no legal significance. Cf. *Booth v. Dorsey,* supra; also *Thompson-Starrett Co. v. Heinold,* 60 F. 2d 360, 361 (C. C. A. 3).

The remaining defendant was not harmed by the discontinuance. Whatever right it may have had to contribution from the other defendant, the liability therefor could not have arisen until judgment had been entered against it on account of the plaintiff's claims. *Ashley v. Lehigh & Wilkes-Barre Coal Company,* 232 Pa. 425, 431-2, 81 A. 442; *Rudman v. City of Scranton,* 114 Pa. Superior Ct. 148, 152, 173 A. 892. Rule 2232 (b) of the Rules of Civil Procedure (Pa.) is not presently germane. It affords the procedure invocable by a misjoined party to have himself eliminated by the court. The relevant provision is Rule 2232 (d) which carries into effect the intent and purpose of the Act of 1923, cit. supra. What a court is thereby authorized to do at trial, a plaintiff may effect before or at trial with the court's approval which, as already stated, may be inferred in the circumstances.

The assignments of error relating to the discontinuance are accordingly overruled. Coming to the assignments which question the competency and legal sufficiency of the plaintiff's proofs of libel, the evidence discloses the following circumstances.

At the time of the alleged libelous publications, Bausewine, the plaintiff, was Chief of Police of Norristown,—a position which he had occupied continuously for thirteen years. Until four years prior to assuming that post he had been, for almost twenty-nine years, a member of the police force of the City of Philadelphia from which he had retired on pension.

On July 28, 1942, the Times Herald published an editorial entitled "YOUTH AND AGE IN WAR." This editorial, after arguing the need of younger men in "the fighting services", stated that "By the same token, if in a kind of reverse ratio, old men holding official places important to home defense during the war should be re-

placed with younger men." This was followed by a paragraph which stated that, "Norristown has a septuagenarian police chief in this class. He was pensioned in Philadelphia over a decade ago but Norristown has employed *the Philadelphia castoff* ever since, during which he has drawn both his Philadelphia pension and his Norristown pay." (Emphasis supplied.)

Three days later (July 31, 1942), the Times Herald published a double column front page article under the following headline in large, bold-faced type: "Bausewine's Smash-up Recalled; His Pal Man With Criminal Record" and the following prominent sub-head: "Joe Allegro, With Many Aliases, Friend for 20 Years (While He Did Time) of Norristown's Chief of Police". The body of the article began with the statement that "If a man is known by the company he keeps or has kept, it may be interesting to Norristown people to be reminded of an automobile smashup * * * in which Chief of Police George Bausewine figured soon after he landed here". The "smashup" had reference to an automobile collision at a street intersection in Norristown which had occurred approximately eleven years before. Bausewine had been a passenger in one of the automobiles involved in the collision. The article identified "The driver of the car Bausewine occupied" as "an old-time friend of the chief's, one Joseph Allegro, who * * * was found guilty at a Montgomery County Court hearing and fined $10 and costs * * *". The article then stated that "the point of the whole affair is not so much who was responsible for the accident as who was this fellow Allegro, the traveling companion of Norristown's chief of police, in whom is vested the direction of this Borough's public safety in war time". The article concluded by submitting "the black record, offered in evidence at [Allegro's] hearing, [which] speak[s] for itself:". This was followed by a detailed account (in bold-faced type) of Allegro's criminal record which showed numerous arrests on various charges, including keeping a bawdy-

house, aggravated assault and battery, possession and sale of narcotics, etc. The article concluded with a quotation from the speech of the prosecuting attorney inveighing against Bausewine as a friend of Allegro.

The above editorial and article had been preceded by an editorial in the Times Herald of June 30, 1942, entitled, "GAULEITER BAUSEWINE". While all three publications were made matters of complaint in the first suit instituted by Bausewine against Strassburger and Norristown Herald, Inc., the "GAULEITER BAUSE-WINE" editorial was later voluntarily withdrawn by the plaintiff as not amounting to libel or evidence of libel.

By letter of August 13, 1942, addressed to Strassburger, as president of the Times Herald, Bausewine demanded a retraction of the alleged defamatory statements made concerning him in the above-mentioned article of July 31st. Not having received any response to this letter in the meantime, Bausewine, on September 19, 1942, filed his first suit against Strassburger and Norristown Herald, Inc.

On the same day, the Times Herald carried a front page article under the following full page display headline: "BAUSEWINE, POLICE CHIEF, SUES TIMES HERALD" with the following double column sub-headlines in large type: "States Court Review of Accident With Gangster Was 'Scandalous' "—"Criminal Record Was Offered in Evidence at Hearing—Bausewine Calls It 'False, Defamatory and Malicious' ". After relating that Bausewine had instituted suit against Strassburger and Norristown Herald, Inc., for libel, the article stated that "The case is founded on criticisms of Bausewine's official conduct printed in the Times Herald, including a court review of the criminal record of Joe Allegro, an associate of Bausewine's. * * *" The article further stated that "The suit should give Norristown a long-needed showdown on whether this Borough and its people should longer tolerate this Philadelphian, former

associate of a gangster, as the head of its police department." This article also referred to Bausewine as "a former police officer at Bocaraton, Fla., during the bootlegging days of prohibition. * * *" The significance of the latter reference will appear presently.

Two days later (September 21, 1942), the Times Herald published its reply to Bausewine's demand of August 13, 1942, for a retraction. The article appeared under a full front-page display headline as follows: "BAUSEWINE WANTED APOLOGY FOR PRINTING COURT RECORD" and the following sub-headlines in large, bold-faced type: "SO WE PRINT IT AGAIN, WITH QUERY ABOUT BEER TRUCKS PUT UP TO CHIEF OF POLICE"—"Lawless Prohibition Days of Bootlegging Recalled—Head Cop Draws Philadelphia Pension as Well as Norristown Salary." In a paragraph headed, "Lawless 'Dry' Days Recalled", the article decried the evils of the prohibition era, saying that "it was the custom [then] to have guards riding the trucks" (engaged in transporting illicit liquors) "from seaports * * * to the inland where hijackers, fixers and other manifold interests had to be protected". The article added that "It was a lucrative business for these so-called 'riders' "; it expressed the hope "that those days will not return"; and stated that "the men who prevented law enforcement in nefarious pursuits of this kind are no longer wanted". Then came the following,—"We should like to ask Chief of Police Bausewine whether or not he ever rode such a truck and whether or not he was aware that Boca Raton, Florida, was one of the chief ports of entry for bootlegged liquor merchandise owing to its excellent harbor, which * * * was a remote and practically inaccessible spot because of the marshes and bogs surrounding this inlet on the Florida coast".

The two articles last above described constituted the basis of Bausewine's complaint in his second suit against the two defendants.

In addition to offering the above-mentioned writings in evidence at trial, the plaintiff testified, as did also

two of his witnesses, to matters which, if believed, were sufficient to support a finding that the publications complained of were the result of a deliberate exercise of actual malice on the part of Strassburger. He controlled the Times Herald, had openly avowed his intention to "get" Bausewine and had personally participated in editing at least one of the offending articles. There was testimony as to hostile statements by Strassburger in amplification of his threat to "get" Bausewine which need not be repeated but which, if believed, must have left little doubt in the minds of the jury as to Strassburger's animus. As to the reason for this animosity, as revealed by the record, it is unnecessary to say more than that it grew out of Bausewine's failure to aid Strassburger, as the latter had requested him to do, in connection with a matter purely personal to Strassburger and wholly unrelated to Bausewine either in his public or private capacity. The appellant complains that the occurrences testified to (having happened late in 1940) were too remote to furnish causative malice for the publication of the writings in the summer of 1942. The answer to that is that there was testimony which fully warranted the jury in finding both the existence of actual malice and its persistence, unabated, down to and throughout the time of the publications.

It was for the court to say, as a matter of law, whether the writings in suit were capable of a libelous meaning. If they were, it then became the jury's duty to determine whether they had such meaning in fact. See *Boyer v. Pitt Publishing Company,* 324 Pa. 154, 157, 188 A. 203; *Collins v. Dispatch Publishing Co.,* 152 Pa. 187, 190-191, 25 A. 546; *Neeb v. Hope,* 111 Pa. 145, 154, 2 A. 568. The jury resolved that issue in the plaintiff's favor. The pertinent inquiry, therefore, is whether the learned trial judge erred when he held the publications to be capable of libelous meaning. Where actual malice is proven extrinsically, writings which might otherwise qualify as fair comment and as having been published

from a proper motive may have an entirely different legal effect. Cf. *McIntyre v. Weinert,* 195 Pa. 52, 56, 45 A. 666.

The learned trial judge could not justifiably have ruled that the writings in suit were incapable of a libelous meaning. Even without the extrinsic proofs, the assailed publications themselves afforded an inference of malice. That the statements respecting the plaintiff, of which complaint is made, were defamatory is hardly open to dispute. Cf. *Collins v. Dispatch Publishing Co.,* supra, at p. 190. And, it is fairly deducible that their purpose was to affect the plaintiff adversely in his position, which both the editorial and the articles specifically identified. Cf. *Holland v. Flick,* 212 Pa. 201, 204, 61 A. 828. If false, the defamatory statements were actionable without proof that any particular damage followed their publication. *Collins v. Dispatch Publishing Co.,* supra. The assignments of error which complain of the reception of the writings in evidence and of their submission to the jury as evidence of libel are therefore overruled.

The availability of the defenses of truth, justification and privilege which the defendant's pleas interposed depended upon issues of fact which were for the jury to resolve. There was ample evidence in the case to justify the jury in finding that the reference to the plaintiff as "a Philadelphia castoff" and that the imputation that he, while an officer of the law, had ridden bootleggers' trucks for improper purposes were untrue and lacked any justification. The jury's findings in such regard, as implied by the verdicts, were but natural and reasonable conclusions from the evidence. The only evidence touching the plaintiff's surrender of his position on the Philadelphia police force was that he had resigned voluntarily after almost twenty-nine years of continuous service and after having risen to the grade of lieutenant (comparable to captain at the time of trial). As to the imputation that the plaintiff had been a participant in the illegal transportation of contraband liquors, the testi-

mony proffered by the defendant in attempted justification of the cognate publications was so inadequate and insufficient that the learned trial judge, on motion, very properly struck it from the record. The assignments of error based on the court's action in that instance are plainly without merit. According to the undenied testimony, Bausewine had never been in Boca Raton; and, the defendant failed to prove either that the plaintiff had ridden trucks for illicit purposes elsewhere or that the defendant had any reliable or trustworthy information that he had done so. Insinuating that the plaintiff, while an officer of the law, was a willful law violator came very close to being, if it was not actually, libel *per se.* Cf. *Neeb v. Hope,* supra, and *Holland v. Flick,* supra. The fact that the learned court below did not so treat it, of course, gave the defendant no cause for complaint.

The appellant stresses its claim of privilege particularly in relation to the publication concerning Bausewine's friendship with Allegro. But, here again, whether those statements were privileged depended upon facts which were for the jury to determine. To qualify as fair comment, a publication must have been upon a proper occasion, from a proper motive, in a proper manner and must have been based upon reasonable or probable cause. *Hartman v. Hyman & Lieberman,* 287 Pa. 78, 83-84, 134 A. 486; *Montgomery v. New Era Printing Company,* 229 Pa. 165, 167, 78 A. 85; *Conroy v. Pittsburgh Times,* 139 Pa. 334, 338, 21 A. 154; *Briggs v. Garrett,* 111 Pa. 404, 414, 2 A. 513. Under the evidence, it was for the jury to say whether the resurrection of the court record of Allegro's hearing for a traffic violation, after a lapse of almost eleven years and when it was no longer news, was upon a proper occasion,—and, whether it was done for a proper purpose or from a desire to defame and disgrace the plaintiff to his injury. It was necessary that these and related questions of fact be answered by the jury before it could be determined whether or not the plea of

privilege was available to the defendant even in this instance. The privilege which ordinarily attends a newspaper report of court proceedings is not absolute. The privilege may be forfeited by an abuse such as unfair and unwarranted comment. See *Boyer v. Pitt Publishing Company*, supra, at p. 159, and cases there cited. Privilege is unavailable as a defense when the publication is made from actual malice. See *McIntyre v. Weinert*, supra, at p. 57.

The learned trial judge submitted the issues to the jury in a charge which was clear, fair and comprehensive and of which the appellant makes no complaint. In fact, at the conclusion of the charge, counsel for the defendant appropriately and frankly stated of record that it was "complete and very fair".

The fact that two months after the trial of the instant cases the plaintiff was found guilty in the local criminal court of accepting a bribe and of nonfeasance in office did not constitute after-discovered evidence entitling the defendant to a new trial on that ground. At most, it was a subsequently transpiring occurrence which, if known at the time of the trial now under review, would not have been admissible. The learned court below therefore correctly overruled that ground as furnishing no reason for a new trial. While it is permissible to show that one claiming damages for injury to his reputation has a bad reputation, proof of separate acts of bad conduct or guilt of criminal offenses is not admissible on an issue of general reputation, not even to mitigate damages. *Pease v. Shippen*, 80 Pa. 513, 515-516. Moreover, that issue must be related to the time of the alleged injury. *Hopkins v. Tate*, 255 Pa. 56, 60-61, 99 A. 210. Nor was the plaintiff's conviction relevant to the defamation in the defendant's publications. Cf. *Moyer v. Moyer*, 49 Pa. 210, 211; *Conroe v. Conroe*, 47 Pa. 198, 201. Beyond that, the defendant never made an issue of the plaintiff's reputation. On the contrary, upon the defendant's own objection, the learned trial judge foreclosed the plaintiff

from offering in rebuttal evidence of the plaintiff's good conduct for the purpose of meeting any adverse inference that might be drawn from the defendant's testimony. In so ruling, the learned trial judge stated, — "There is no insinuation of your [the plaintiff's] character or reputation." In no event was the plaintiff's reputation material to the question of the punitive damages for which the defendant could be justly assessed under the evidence. To libel, from *actual* malice, a person of even bad reputation may merit punishment by way of damages as much as would such a libel of a person of good reputation.

We are certainly in no position to say that the learned court below erred when it entered judgments for the plaintiff in one-fourth of the amounts of the verdicts. The cases had been tried twice with resultant verdicts against the appellant in an aggregate amount of $50,000 each time. Punitive damages were especially indicated because of the proofs of actual malice, which had been openly avowed and deliberately carried out. And, the continued existence of the actual malice was further accentuated by the defendant's failure to make good its plea of truth and justification and, particularly, by its persistence in that plea (at the new trial obtained on its motion) after a jury had already discountenanced the plea and had rendered verdicts for the plaintiff in quite substantial sums. See *Will, etc., v. Press Publishing Co.,* 309 Pa. 539, 544, 164 A. 621.

The appellant's remaining contentions are no less lacking in merit. The defendant's objection at trial, which resulted in the dismissal of the jury first drawn, did not go to the qualifications or integrity of the particular jurors. It related solely to the manner in which the clerk had drawn the jurors' names from the box. The jurors, so dismissed, were therefore very properly returned to the whole panel from which the second jury was drawn. The fact that four of the original group were among the second twenty drawn (subject to chal-

lenge) did not harm the defendant. And, the prejudice it ascribes is unrealistic. The whole matter of the dismissal of the first panel of twenty jurors had been heard by the court in chambers out of the jurors' hearing. Even had they known at whose instance the first drawing had been set aside, that would not have furnished legal cause for subsequent challenge. Anyway, it was too late after a trial on the merits to raise the question which the appellant now urges. See Act of February 21, 1814, P. L. 60 (6 Sm. L. 111, § 1), 12 P.S. § 711.

Nor was it error for the trial court to permit two of the plaintiff's witnesses to testify, as recipients, concerning the effect of the publications on the minds of average readers. The fact that the particular witnesses happened to be former newspapermen and former employees of the defendant did not render them incompetent. The extent of their ability to reflect the impressions of average readers went merely to the credibility of their estimate. Whether they should have been permitted to testify in such regard lay in the sound discretion of the trial judge. See *Davis, Trustee, v. Southern Surety Co.*, 302 Pa. 21, 26, 153 A. 119. There was no abuse of discretion. The defendant itself produced two witnesses, who also testified in that regard, but it now complains that all such testimony was irrelevant if not incompetent, citing *Pittsburgh, Allegheny and Manchester Passenger Railway Co. v. McCurdy*, 114 Pa. 554, 559, 8 A. 230. Even assuming as much, the testimony did no substantial harm. In the end, the learned trial judge, in a clear and understandable instruction, submitted for the jury's ascertainment what effect the publications had had upon the average reader.

Finally, the appellant complains that the plaintiff and his trial counsel were guilty of prejudicial and inflammatory statements in the jury's presence. A careful reading of the record has not disclosed any justification for the defendant's charge of prejudice. Whether a juror should have been withdrawn on any of the motions made

by the defendant involves a matter which also rested in the sound discretion of the trial judge. We fail to see any abuse of such discretion. On the other hand, care was uniformly exercised by the court to preclude the injection of passion and prejudice and, to that end, plaintiff's counsel appears to have coöperated. In the one instance where the plaintiff himself, while on the stand, volunteered a statement to which defendant's counsel took vigorous exception, the learned trial judge promptly ordered it stricken from the record and properly and adequately cautioned the jury accordingly. The trial was free from substantial error and the appellant has no just cause for complaint.

The judgments appealed from are affirmed.