McAndrew *v.* Scranton Republican Publishing Company, Appellant.

Argued March 7, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent.)

*Eugene Nogi,* with him *J. Julius Levy* and *Nogi, O'Malley & Harris,* for appellant.

*John R. Gaughan,* with him *Victor J. Roberts,* for appellee.

OPINION BY DITHRICH, J., July 15, 1949:

Plaintiff, chief deputy county treasurer of Lackawanna County, and a resident of the Borough of Archbald, sued defendant for libel. The defendant pleaded not guilty and justification. The case was tried before HOBAN, P. J., and a jury and resulted in a verdict in favor of plaintiff in the sum of $900 which the court subsequently refused to set aside. From the refusal of its motion for judgment n. o. v., defendant has appealed. No special damages were pleaded or proved.

The facts appear in the opinion of the court discharging appellant's rule to show cause, as follows:

"In the Fall of 1946 a spirited election campaign took place in Lackawanna County in which, among other candidates running for office, was one Fraser

Donlan, a candidate for State Senator on the Republican party ticket. During the campaign Donlan was appearing at various political meetings in his uniform as a Captain in the United States Marine Corps, of which service he was still a member. As a result of wounds received in action in the Pacific theater of war Donlan had prior to the time of the campaign suffered the amputation of a leg, which fact was well known to the public at large.

"On Sunday afternoon, October 27th, a Polish Club in the Borough of Mayfield, this County, at the conclusion of a business meeting of the club, held an open session at which candidates or their supporters of various political parties were invited to appear and express their views. This particular meeting was attended by both the plaintiff, McAndrew, who appeared as a speaker on behalf of the candidates of the Democratic party, and by Fraser Donlan, . . . by James Scoblick, then a candidate of the Republican party for a member of the United States Congress, and various other candidates and political speakers.

"On October 28, 1946, there was printed in a prominent position on page 3 of the Scranton Tribune, published by the defendant company and a morning daily newspaper of wide circulation, the following story:

### " 'CAPT. DONLAN ROUTS HECKLERS WHO ACCUSE HIM OF TRYING TO GET SYMPATHY VOTES

" 'Three Court House employes threw a political meeting in Polish Hall, Mayfield, into wild confusion yesterday afternoon and were promptly denounced from the floor when their spokesman charged Capt. Fraser P. Donlan, Republican nominee for State Senator, was using his uniform and the flag to get sympathy votes.

" 'Reflecting the panic that Capt. Donlan's candidacy has created in the Democratic leadership, Matthew McAndrew, Chief Deputy in the County Treasurer's

Office, and an Archbald politician for many years, took the platform and declared that the wounded Marine officer was trying to get sympathy votes with his uniform and by carrying the flag.

## " 'JUST A LITTLE COMMUNISM

" 'McAndrew, in the course of his blistering attack on the Republican candidates, took occasion to reply to G. O. P. charges that Communism found a home in the Democratic Party. He apologized by saying "of course, we all have to have a little Communism today".' "

Plaintiff in his statement of claim alleged that the foregoing account of the meeting was false and libelous in that he never made the statements attributed to him and that the published report defamed him by lowering him in the estimation of the community. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him": Restatement, Torts, §559.

The first question raised by appellant is: "Were the writings in suit capable of libelous meaning?" It is agreed that it is the duty of the court to determine that question. *Bausewine v. Norristown Herald, Inc.,* 351 Pa. 634, 41 A. 2d 736; *Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 188 A. 203; Restatement, Torts, §614 (1).

The question was twice answered affirmatively by the learned court below; first, in refusing defendant's motion for judgment on the pleadings and second, in refusing defendant's motion for a compulsory nonsuit. On both occasions the ruling of the court was in accordance with Restatement, Torts, §614 (1), "The court determines whether a communication is capable of a defamatory meaning"; and §614 (2), "The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

Judge HOBAN said that, in reaching the conclusion that it was his duty to submit the question as to whether

such a meaning actually was derived by the recipients to the jury, he "had to take into consideration the situation as it was in the Fall of 1946, at the close of a . . . war, when great masses of military men were being discharged from service, returned to their communities and became the object of . . . public regard and devotion. . . . in solving the question here we must take into consideration the current state of public sentiment. It is quite easy to understand how the remarks attributed to McAndrew, reflecting as they did upon the apparent exploitation of the uniform of the United States Marine Corps for the political advantage of the wearer, could in the minds of many people submit McAndrew to humiliation and contempt. The writer of this opinion [a veteran of both World Wars], if he were one of the original recipients, would probably not have taken a defamatory meaning from it, but he can see how easily sentimental people at the time and place would have received the remarks and imputations attributed in the article to McAndrew. Hence, within the meaning of Section 563 of the Restatement . . . in the opinion of the Court the recipients of the communication could either correctly or mistakenly, but reasonably, understand that the statements attributed to McAndrew were intended to reflect seriously upon a person then the subject of high public regard, and would be regarded as an unpatriotic and low action by the maker of the statements. So also with that part of the communication which attributes to McAndrew a statement that we all have to have a little Communism. Such a statement as indicating association or sympathy with a group or political organization which a substantial part of our citizens regard as a discredible one, is capable of a defamatory meaning. Restatement, Torts, Defamation, Section 559, Comment e [Illustration 2]."

Typical of the defamatory meaning derived by the recipients from the remarks attributed to McAndrew

concerning Captain Donlan is the testimony of Joseph Coleman, who testified that, "Since . . . [that statement in the paper] the majority of people hasn't got much use for Matt McAndrew. . . . And I personally ain't got no use for him since that, since having two sons in that particular fight." Typical of the effect upon the recipients of the remarks attributed to McAndrew concerning Communism is the testimony of T. J. Kenny. He testified that the meaning conveyed to his mind was that "McAndrew was either a Communist or a Communistic sympathizer, and any man holding the position that he held in the country would be in that respect a public menace. . . . Q. And why would he be a public menace? A. Because Communists are bad fellows who want to overthrow the government. Q. And with that meaning that you have just said was conveyed to you, what effect, if any, did that have on your estimation of the person referred to? A. I just said he was a public menace and unfit to associate with."

In *Boyer v. Pitt Publishing Co.*, supra, the Court, in an opinion by Mr. Justice STERN, said, at page 157: "The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are likely to attribute to them. It is for the court to determine whether a publication is fairly and reasonably *capable* of the meaning imputed to it by the innuendo, leaving it to the jury to say whether it *actually* conveys the meaning so ascribed to it."

Appellant contends that there can be no recovery "where innuendo and extrinsic evidence are required to make the published words defamatory . . . [and] no special damages are . . . alleged or proven."

In *Bausewine v. Norristown Herald, Inc.*, supra, the Court, in an opinion by Mr. Justice JONES, said, at page

644: "If false, the defamatory statements were actionable without proof that any particular damage followed their publication. Collins v. Dispatch Publishing Co., supra [152 Pa. 187, 25 A. 546]." And in *Boyer v. Pitt Publishing Co.,* supra, where it appeared that plaintiff proved no special damages, a verdict in favor of plaintiff was likewise sustained.

The opinions in those two quite recent cases are in conformity with the Restatement, Torts, §569: "One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other although no special harm or loss of reputation results therefrom. . . . Comment c. Damages. The publication of any libel is actionable per se, that is irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise."

The law applicable to the facts in this case was clearly stated by the learned trial judge, as follows: ". . . if the publication of defamatory matter is done in such a way as to constitute libel, it is actionable per se without either the allegation or proof of special damages, unless excused by the defense of truth or privilege, and as to these defenses the burden is clearly upon the defendant . . . The issue of truth, that is, as to whether McAndrew did or did not make the statements attributed to him by the communication, was submitted to the jury on evidence which would justify the verdict either way. The jury having found contrary to the defendant's position, we cannot say that the evidence was not sufficient to support such a result."

On the question of privilege, the learned court below correctly held that the publication was privileged if the defendant had reasonable or probable cause to believe in its truth.

In *O'Donnell v. Philadelphia Record Co.,* 356 Pa. 307, 51 A. 2d 775, the Court, in an opinion by Mr. Justice

LINN, said, at page 312: "It was the duty of the jury to find what the witnesses said and what they meant and whether the defense of privilege was made out"; and at page 315: "In Hartman v. Hyman & Lieberman, 287 Pa. 78, 83-84, 134 A. 486, Mr. Justice SIMPSON said: 'It has often been said that a privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable or probable cause: Conroy v. Pittsburgh Times, 139 Pa. 334; Wallace v. Jameson, 179 Pa. 98; McGaw v. Hamilton, 184 Pa. 108. The immunity of a privileged communication is the exception, and he who relies upon an exception must prove all the facts necessary to bring himself within it: Collins v. The Morning News Co., 6 Pa. Superior Ct. 330; Mulderig v. Wilkes-Barre Times, 215 Pa. 470; Montgomery v. New Era Printing Co., 229 Pa. 165; McGeary v. Leader Publishing Co., 52 Pa. Superior Ct. 35. Want of reasonable care and diligence to ascertain the truth, before giving currency to an untrue communication, will destroy the privilege: Clark v. North American Co., 203 Pa. 346, 351; Collins v. Morning News Co., supra; McGeary v. Leader Publishing Co., supra; Com. v. Costello, 1 Pa. Dist. R. 745, 747, per ENDLICH, P. J.' While that statement was made in an action of slander of trade, it was repeated in the libel action of Stevenson v. Morris, 288 Pa. 405, 409 et seq., 136 A. 234. See, also, Williams v. Kroger Grocery and Baking Co., 337 Pa. 17, 19, 10 A. 2d 8. *The rule of those cases was reaffirmed* in Bausewine v. Norristown Herald, Inc., 351 Pa. 634, 645, 41 A. 2d 736 . . ." (Italics supplied.) See, also, Restatement, Torts, §613 (2) (b) and Comment i on subsection (2).

Acting on the suggestion of Mr. Chief Justice MAXEY in his dissenting opinion in the *O'Donnell* case, the trial judge directed the jury to make special findings of fact. Appellant urges that since the jury's answers established that its city editor called certain persons who

attended the meeting for a verification of the account of it, as it was published, it became the duty of the court to decide the question of privilege as a matter of law. On that point Judge HOBAN said: "They [special findings] conclusively establish the facts as to the origin and preparation of the story by the editor who wrote it, but, in our opinion, whether there was reasonable or probable cause to believe in the truth of the statements as published is a question which depends upon inference from these facts and upon which men might differ. Hence, [the question] was for the jury rather than for the Court." He pointed out that the first knowledge of the meeting came to the newspaper "through the medium of a political partisan, Harold A. Scragg, Esq.," and that the editor "thereupon communicated with Joseph Marzzacco, Esq., then secretary of the Republican County Committee, . . . and Mr. James Scoblick, the candidate for Congress, . . . and asked them for their report of the facts. . . . The Court submitted to the jury the question as to whether the direct report from two persons subject to the imputation of political bias was sufficient to cover the requirement that the publisher should have reasonable and probable cause to believe in the truth of the statements contained in the communication. . . .

"What could the newspaper have done more than it did do? Obviously, it could have asked McAndrew himself for his own account, or have printed the story as the statements of Marzzacco and Scoblick and not as matters of fact apparently reported on the authority of the newspaper's own news gathering staff."

Finally, appellant urges upon us that an affirmance of the judgment would be an abridgment of its right to freedom of speech and freedom of the press. It maintains that "A decision that a newspaper may not without incurring legal liability publish a statement publicly made by a person active in political affairs during a

political campaign, where it does so in good faith and on evidence such as is present in this record, would greatly restrict the privilege of newspapers." This Court, and especially the writer of this opinion, a former newspaper reporter, would be the last to so hold. However, the case at bar turns not on the publication of the statement, but upon the *truth or falsity* of the statement. There has not been brought to our attention, nor has our own research discovered, any principle of free speech, constitutional guarantee, or juridical requirement which protects a publisher, regardless of the means of publication, against the dissemination of matter that is false and defamatory. To the contrary, ". . . one who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the occasion if, although believing the defamatory matter to be true, he has no reasonable grounds for so believing": Restatement, Torts, §601.

There is nothing in this record to create the slightest doubt in the mind of any reasonable person that Mr. Phillips, City Editor of the Tribune, fully believed the appellee had made the remarks attributed to him in the published account of the matter; but whether or not he had reasonable and probable cause for so believing was a question of fact for the jury and not a question of law for the court.

In commenting on the same question raised in the *O'Donnell* case, supra, Mr. Justice LINN said, at page 314: "The case is very simple in its legal aspects. Did the defendant have reasonable and probable cause? Was defendant's motive proper? Was the manner reasonable? Was the asserted privilege abused? The jury on proper instructions took plaintiff's view of the evidence and rejected defendant's."

Judgment affirmed.