BRUCE LINCOLN–MERCURY, INC., a
Pennsylvania corporation,
Plaintiff,

v.

UNIVERSAL C.I.T. CREDIT CORPORA-
TION, a Delaware corporation,
Defendant.

Civ. A. No. 17903.

United States District Court
W. D. Pennsylvania.

March 27, 1962.

Brennan & Brennan, Pittsburgh, Pa,
for plaintiff.

Duff & Doyle, Pittsburgh, Pa., for de-
fendant.

GOURLEY, Chief Judge.

This is an action for damages based upon the alleged abuse and illegal exercise of orderly and legal procedures by the defendant to enforce claims and rights which arose as a result of business relations between the parties.

Upon jury trial verdict was returned in favor of the plaintiff in the amount of $50,000.00 as actual damages and $5,000.00 as punitive damages.

The matters before the Court are:

1. Defendant's motion for judgment notwithstanding the verdict for the following reasons:

(a) The verdict is contrary to the evidence and against the weight of the evidence.

(b) The verdict is capricious in that plaintiff offered no proof of compensatory damages.

(c) No malice was proved upon which the jury could award punitive damages. and/or

2. Defendant's motion for new trial.

(a) The Court erred in failing to allow defendant to call Witness Kline as and for cross-examination.

(b) The Court erred in its instructions to the jury.

(c) The verdict is against the weight of the evidence and was based on speculation.

### HISTORY

Plaintiff automobile dealer borrowed, with guarantees of its Directors, the sum of $10,000.00 from the defendant as a capital loan and entered into various agreements with the defendant to finance new car purchases from the Ford Motor Company. Defendant agreed to pay plaintiff a percentage of paid out customer contracts and insurance premiums collected from plaintiff's customers after a certain reserve had been created in the hands of the defendant. Commencing April, 1956, numerous transactions occurred both in wholesale financing and retail financing between the plaintiff, its customers and the defendant. In September, 1956, defendant officers, based on suspicion, erroneously concluded that plaintiff, under its floor plan agreement, was selling cars out of trust and that a substantial check drawn by plaintiff and delivered to defendant was worthless by reason of non-sufficient funds to cover it.

Acting on its wrongful assumption, two of defendant's agents, late on the night of September 19, 1956, called plaintiff's officers to a public restaurant in the area and demanded forthwith payment of the balance of its capital loan.

Defendant's agents had been drinking and were loud and boisterous. The incident became generally known in the community where plaintiff conducted its business and in the trade.

Arrangements were then made by the plaintiff to transfer substantially the same type of business that it had been conducting with the defendant to the Commercial Credit Corporation and payments were made on plaintiff's behalf by Commercial Credit Corporation to liquidate all transactions existing between plaintiff and defendant. In October, 1956, defendant forwarded release of its financing statements to the plaintiff and thereafter plaintiff continued its financing with Commercial Credit Corporation.

In October, 1956, plaintiff ordered from Ford Motor Company seven cars, being the display cars for the 1957 models. Defendant failed to notify Ford Motor Company that it no longer financed plaintiff and had erroneously paid for the cars that were delivered to the plaintiff. Plaintiff does not dispute that it owed defendant what it had paid for the cars and that if it had been called to plaintiff's attention, it would have caused Commercial Credit or someone else to pay the defendant.

Nevertheless, in the presence of plaintiff's customers defendant's agents ordered plaintiff's customers away from the cars and then proceeded to auction them off to a number of car dealers who put them on sale on used car lots the following day. Plaintiff could not replace the new models in sufficient time to have a display.

Due to the adverse publicity, plaintiff could not secure continuation of financing with outside firms, sustaining an operating loss, closing the business and selling its assets.

## DAMAGES

Plaintiff showed value of the Company by proving that it had sold in excess of 110 new cars to July 31 during 1956 and 167 used cars to the same date; that although no substantial profit had been realized, it was conducting a substantial business at all times to the date of the taking of its cars. Evidence was adduced that the greatest profit period in the new car dealerships occurs during the months immediately following the display of the new models, if the new models are accepted by the public.

Records prepared by an accountant of the Commercial Credit Corporation showed substantial equity and opportunity for profit in plaintiff's business.

The law is settled that a person whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. It would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference although the result be only approximate. Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544; Commonwealth Trust of Pgh. v. Hachmeister Lind Co., 320 Pa. 233, 181 A. 787.

## PUNITIVE DAMAGES

The Court instructed the jury that if it found that the cumulative actions of defendant from September 19, 1956 to November 15, 1956 were unjustified and malicious, it could award punitive damages, Will v. Press Publishing Co., 309 Pa. 539, 164 A. 621; Voltz v. General Motors Acceptance Corp., 332 Pa. 141, 2 A.2d 697.

Such damages are, as the nomenclature indicates, penal in character and the appropriateness of any penalty seldom admits of exact measurement. I am satisfied that an award of $5,000.00 for punitive damages bears a reasonable relationship to the actual compensatory damages sustained and is reasonably supportable by the record.

The Court is not free to reweigh the evidence and set aside the jury's verdict merely because the jury could have drawn different inferences or conclusions or because the Court regards another result as more reasonable, Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Masterson v. Penna. Railroad Co., 182 F.2d 793 (3rd Cir.); Thomas v. Conemaugh & Black Lick Railroad Co., 234 F.2d 429 (3rd Cir.).

Based upon the entire record, I am compelled to conclude that the jury had sufficient evidence and inferences deducible therefrom to find that defendant's malicious and wilful conduct damaged the credit of plaintiff, its prestige and confidence in the minds of banks, lending institutions and the general public so as to irreparably damage its business and, based upon the resulting damage, to predicate an award of $50,000.00 as compensatory damages and $5,000.00 as punitive damages.

## MOTION FOR NEW TRIAL
### Witness Kline

Defendant complains of the Court's failure to allow Witness Kline to be called as and for cross-examination. Kline had been an officer, owner and director of plaintiff corporation but had been removed from all categories in October of 1956, prior to the occurrences of the seizure of the Ford automobiles charged against the defendant. The witness had been subpoenaed by the plaintiff but the

witness refused to honor the subpoena and the plaintiff did not press for his appearance. Defendant then interviewed the witness through associate counsel and was well apprised of his testimony before he was called as a witness. The Court advised defendant counsel that if the witness proved hostile, defense would have the right to then cross-examine. The witness not only was cooperative to the defendant but volunteered testimony which the Court considered damaging to the plaintiff.

 Since the witness was not a managing officer of the plaintiff at the time of the primary incident upon which the suit was predicated, and by virtue of the cooperative attitude of the witness, the Court did not deem the witness hostile, and in the exercise of its discretion did not permit said witness to be called as and for cross-examination, Rule 43(b), Federal Rules of Civil Procedure, 28 U.S.C.A. See O'Shea v. Jewel Tea Co., 233 F.2d 530 (7th Cir.).

### POINTS FOR CHARGE

The Court refused to charge in the precise language of a number of requested points for charge since they involved a discussion of factual data containing an expression of opinion as to conclusions and inferences which the jury was required to accept from the facts related. I have always followed the practice not to discuss the facts with the jury. It is my belief that in the interest of strict impartiality, the weight and inferences deducible from the evidence are solely the province of the jury which the Court in no way should preempt and must exercise extraordinary caution to prevent the great influence which a jurist necessarily wields from being misconstrued by jurors.

It is further noteworthy that numerous phases and aspects of defendant's points for charge were most thoroughly covered in the Court's instructions to the jury. In this respect, the law is well settled that refusal of requested points for charge does not constitute error where the substance thereof is adequately embraced in the trial Court's charge to the jury. United States v. Riggi, 256 F.2d 57 (3rd Cir.).

### WEIGHT OF EVIDENCE

In the exercise of my judicial discretion, upon re-examination and meticulous review of the record, viewing the verdict in the overall setting of the trial and considering the character of the evidence and the legal principles which the jury was bound to apply to the facts, it is incumbent upon me to abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result, Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir.). Substantial evidence exists in the record to support the verdict of the jury.

Motion for judgment notwithstanding the verdict and/or new trial will be refused.

An appropriate order is entered.