## Degnan Chevrolet, Inc. v. Cocco

*David Malis,* for plaintiff.
*John F. X. Fenerty,* for defendants.

SPORKIN, J., May 7, 1973.—This matter comes before the court upon the consolidation of a bill in equity filed by plaintiff, Degnan Chevrolet, Inc., (Degnan) against defendants, Albert A. Cocco (Cocco) and his wife, Elizabeth J. Cocco (Mrs. Cocco) and an action in trespass filed by Degnan against Cocco only.[1] Degnan instituted these actions simultaneously, October 20, 1972, seeking in the equity action injunctive and general equitable relief, and in the trespass suit damages, arising from the erection by defendants of two signs alleged by Degnan to be libelous.

On November 8, 1972 a preliminary injunction was issued by the Hon. Ned L. Hirsh, J., enjoining and restraining Cocco and Mrs. Cocco "from erecting and maintaining signs placed on their premises which make reference to any business dealings and/or transactions with plaintiff." On November 13, 1972, and on nine intermittent dates thereafter,[2] testimony was

---

[1] The consolidation was effected by the granting of plaintiff's timely motion.

[2] Further testimony was presented and argument heard on December 4, 1972, and on February 20, 22 and 28, March 1, 5, 22, 28 and 29, 1973. These additional intermittent hearings were held due to the detailed presentation by plaintiff's counsel, to the physical discomforts of plaintiff s counsel, and to the previous scheduling of other trial hearings on the intervening days.

presented as on final hearing before the writer of this opinion.[3]

The facts, as admitted in the pleadings and as found from the testimony and evidence adduced at trial are summarized as follows:[4]

On February 27, 1969, Degnan, a Chevrolet dealer, ordered several new Chevrolet automobiles, included among which was a newly manufactured 1969 Impala Custom Coupe. bearing the serial number 164479T-121078, the sale of which automobile to Cocco is, as will hereafter be discussed, the subject of the present controversy.[5]

While this automobile was being unloaded at Degnan's place of business, the car sustained damage to its right front fender and the door hinges adjacent thereto.[6] Degnan replaced the damaged fender[7] with a new fender and adjusted the hinges, following which Degnan's "Make-Ready" department inspected the car and on its inspection sheet reported it to be in all respects a completely new and merchantable vehicle,[8]

---

[3] During the hearings, Degnan's case against Mrs. Cocco was discontinued upon an unopposed defense motion.

[4] Due to the complexity of the factual and legal issues presented, the summary of facts, discussion of law and conclusions of law as required by Pennsylvania Rule of Civil Procedure 1517, as amended, will be set down in narrative form rather than in specific findings.

[5] Tarrytown is an assembly line division of the Chevrolet Divisions of General Motors.

[6] No impact or damage was sustained to the wheel alignment or steering assembly of the car, the only damage being to replaceable body parts. The operability and fitness of the vehicle for use were in no way impaired.

[7] The Chevrolet fender is a bolt-on part, as indicated by the evidence and is therefore readily replaceable.

[8] In the ensuing four years since the purchase of the automobile by Cocco, it has passed each of the requisite State inspections, and is apparently still functioning well even now. No complaint has ever been made by Cocco as to the operability of his vehicle.

and the automobile was taken to the Degnan show-room floor.

Cocco chose this particular automobile after having examined several other automobiles on Degnan's two showroom floors, and after inspecting other new cars on the Degnan lot. On April 11, 1969, Cocco placed a deposit of $10 on the car and signed an agreement to purchase this vehicle, described thereon as bearing the serial number 164479T121078. The car was accordingly removed from the showroom floor and was returned to the service department of Degnan and was prepared for delivery. Cocco took delivery thereof on April 17, 1969, and on April 26, 1969, Cocco paid the balance due on the total purchase price of $3,612.

Approximately seven weeks thereafter, Cocco discovered paint overspray on the chrome stripping attached to the right front fender. His ensuing investigation led him to find that the fender had been replaced upon delivery of the car to Degnan, as stated previously. Cocco, feeling that he had been unjustly wronged by such actions of Degnan, then embarked upon a course designed to gain "recompense" for what he considered to be injuries suffered by him.

Cocco complained both to General Motors and to Degnan, alleging, in substance, that he had paid for what he thought was a *new* car and that he was actually sold a *used* automobile. Cocco further demanded a new car to replace the one selected, purchased, and used by him. General Motors stated that the relief sought by Cocco could not be granted in such a case, but Degnan responded that it would willingly refinish the car to Cocco's satisfaction. Cocco, in fact, brought the car to Degnan on or about January 23, 1970, and the refinishing work was performed under the warranty, at no charge to Cocco.

Cocco, however, remained dissatisfied. He continued with the course of action that had been

instituted by him immediately upon discovering the alleged defect. This included letters by Cocco to the State Attorney General and to the Bureau of Consumer Protection. Those agencies investigated and reviewed the case, but found no cause for further action. Cocco again complained to Chevrolet and, finally, having been informed at every point that he had no valid cause of action, Cocco filed a complaint against Degnan in the Court of Common Pleas of Philadelphia,[9] seeking substantial compensatory and punitive damages.

The case of Cocco v. Degnan was heard by the board of arbitrators on June 19, 1972, which panel unanimously found for Degnan. Cocco appealed on July 12, 1972 the decision of the arbitrators,[10] and shortly thereafter erected two signs in his yard, in plain view of the public. Such signs, standing next to each other, read as follows:

"BEFORE YOU BUY
REMEMBER
DEGNAN CHEVROLET
SOLD ME A NEW CAR
THAT HAD $198.00
IN   BODY REPAIR AND
DID NOT TELL ME."

"DEGNAN AND G.M.
DISSATISFIED CUSTOMER
ASS'N JOIN HERE."

Degnan then filed the instant actions, asserting that the signs resulted in a libelous innuendo that Degnan

---

[9] March term, 1970, no. 2075. The suit was instituted on March 11, 1970.

[10] The case was tried nonjury de novo on November 14, 1972, before Hon. Lois G. Forer, J., and again resulted in a verdict for Degnan, on February 16, 1973.

sold a car to Cocco which was unfit for operation, and concealed the damages to same. Upon consideration of the pleadings, of the testimony presented, of the briefs and arguments of counsel, and of the applicable law, we have concluded that the prayer for injunctive relief should be granted, that Cocco should be permanently enjoined from erecting and/or maintaining the aforementioned signs, and that no monetary damages will be assessed.

Libel has been defined by our Pennsylvania courts as "a maliciously written or printed publication which tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule or injure him in his business or profession": Cosgrove S. & C. Shop, Inc. v. Pane, 408 Pa. 314, 182 A. 2d 751 (1962). As stated in McIntyre v. Weinert, 195 Pa. 52, 56-7, 45 Atl. 666 (1900), quoting Odgers on Libel and Slander, at page 29:

" 'Any printed or written words are libelous which impeach the credit of any merchant or trader *by imputing to him . . . dishonesty . . . in the conduct of his business . . .*' " (Italics supplied.)

Cocco contends, however, that the words of the signs, taken in their literal sense, are true. Degnan *did,* in fact, sell a new car to Cocco upon which it had done $198 of fender repair and did not tell him, and Cocco is obviously a dissatisfied, if not absolutely irate Degnan and G. M. customer.[11] The law of libel in Pennsylvania does not look solely to the *literal* meaning of the written words, however, but rather is concerned also with the *innuendo* arising from such statements. In Boyer v. Pitt Publishing Co., 324 Pa. 154,

---

[11] Although, ordinarily in order to be actionable words must be false, falsity is not an element of a cause of action for libel in Pennsylvania; rather the opposite of falsity, truth is a complete and absolute defense to a civil action for libel: Corabi v. Curtis Pub. Co., 441 Pa. 432, 449, 273 A. 2d 899 (1971).

157, 188 Atl. 203 (1936) Mr. Justice Stern, speaking for a unanimous court, reaffirmed and elaborated upon the concept of libel by innuendo arising from words which are true when taken only in their literal sense, saying:

"That a publication is susceptible of an interpretation which would render it innocuous does not conclusively defeat a right of action for libel. *The test is the effect the (publication) is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.* The words must be given by judges and juries the same signification that other people are likely to attribute to them." (Parenthetical insertions and italics supplied.)

In passing upon the alleged libelous nature of Cocco's signs, our courts have uniformly held that it is for the court to say, as a matter of law, whether the writings were capable of a libelous meaning; if they are found to be capable of such an interpretation, it becomes a question of fact as to whether the writings actually had that meaning: Bausewine v. Norristown Herald, 351 Pa. 634, 643, 41 A. 2d 736 (1945). To be defamatory, these words must have been understood by the "recipient correctly, or mistakenly but reasonably," to mean that the defamed party asserts they were understood to mean: Restatement, Torts, §563, §614(2), comment (b). It is ominously clear to us that the writings in question were capable of meaning that Degnan sold an imperfect or unfit vehicle, or that Degnan sold him a reconditioned or used vehicle while dishonestly representing that it was a new car, and are thus capable of a defamatory innuendo.

In deciding whether the statements on Cocco's signs were, in *fact*, understood by passersby to have

the meaning asserted by Degnan, we may, as the fact finder, properly consider extrinsic circumstances surrounding the publication: Bausewine, supra; McAndrew v. Scranton Republican Publishing Co., 165 Pa. Superior Ct. 276, 280, 281, 67 A. 2d 730 (1949); Bocchiccio v. Curtis Publishing Co., 203 F. Supp. 403, 409 (E.D. Pa. 1962); Baird et al. v. Dun & Bradstreet, Inc., 446 Pa. 266, 272, 285 A. 2d 166 (1971).

Degnan introduced evidence of such extrinsic circumstances, establishing that Cocco complained to several sources, alleging that in selling him a car upon which it had replaced a fender damaged in shipping, Degnan had foisted upon Cocco goods which were damaged, less than perfect, or even used, and that Cocco characterized Degnan's business dealings with him as being dishonest or close to criminal activities. Cocco himself testified that he spoke to perhaps a thousand people in his neighborhood about his "problems" with Degnan, and Degnan presented testimony to the effect that the dealership was innundated with phone calls in response to Cocco's signs, which callers berated Degnan for being dishonest in its business dealings.

Finally, as to whether the readers of Cocco's sign could *reasonably* have considered the words thereon to mean that Degnan had been dishonest or even fraudulent in its business dealings with Cocco, Comment c of section 614 of the Restatement of Torts contains this very significant language:

"In determining the defamatory character of language, the meaning of which is clear or otherwise determined, the social station of the parties in the community, the current standards of moral and social conduct prevalent therein, and the business, profession, or calling of the parties are important factors.

*Thus, an imputation may be defamatory as applied to one person at a given time and place, although it would not be derogatory of another person at a different time or in a different place."* (Cited with approval by the court in Bocchicchio, supra, at 409-410). (Italics supplied.)

In these days of great and laudable clamor over "consumer protection" it would certainly be reasonable, if not *probable* for a person seeing Cocco's signs to read the signs to mean, as those who telephone Degnan obviously did, that Degnan had sold an imperfect or used vehicle to Cocco, while dishonestly representing same to be a new automobile. Thus, we have concluded that although the words on Cocco's signs are not actionable per se, they are capable of a defamatory meaning as a matter of law, and as a trier of facts we find that the recipients, perhaps incorrectly, but *reasonably* understood that the signs were intended to impute dishonesty to Degnan in its business dealings, and therefore that the signs were, in *fact*, defamatory.

Cocco further argues that, assuming the innuendo gave his signs a defamatory meaning, his action did not constitute libel because the innuendo was *true*. Upon consideration of the evidence presented at trial, however, we find ourselves impelled to agree with the conclusion and incisive reasoning of Judge Forer who, in finding for defendant in Cocco's civil suit against Degnan,[12] held that the automobile sold to Cocco by Degnan was *new* and not, as Cocco asserts, "reconstructed," that Degnan had delivered a merchantable and fit car to Cocco, thus fulfilling its duties under the Uniform Commercial Code of April 6, 1953, P. L. 3, reenacted October 2,

---

[12] Referred to supra, footnote 10.

1959, P. L. 1023, 12A PS §2-314, §2-315, sections 2-314 and 2-315, and that in presenting a new, fit and merchantable vehicle to Cocco, Degnan was not under a duty to disclose the nature of work done by it in preparation of the automobile for sale and delivery to Cocco.

At the hearing before us, Cocco's counsel also seized upon a discrepancy in statements contained on the worksheets offered by Degnan as evidence of its inspections and work done on Cocco's car in preparation for sale. The mileage listed for the car upon the original delivery of the vehicle to Degnan was approximately 000006, whereas the mileage listed upon delivery by Degnan to Cocco was slightly less. Cocco asserts that such discrepancies establish that Degnan covertly "switched" cars and delivered to Cocco a vehicle different from the one selected by him from the showroom floor. A preponderance of the credible evidence, however, leads us to believe that the mileage statement was simply a haphazard recording by the Degnan employe, and that the car delivered to Cocco was indeed the one chosen by him at Degnan.

Moreover, the meaning conveyed by Cocco's signs was not that he was given a *different* automobile from the one he had selected for purchase, but rather that he was given the car chosen by him, and *that* vehicle was an imperfect or used automobile. Our Pennsylvania Supreme Court has held, in a decision by Mr. Justice Stern, that:

" 'Specific charges cannot be justified by showing the plaintiff's general bad character; and if the accusation is one of particular misconduct, such as stealing a watch from A, it is not enough to show a different offense, even though it be a more serious one, such as stealing a clock from A . . .' (Quoting

Prosser on Torts, p. 855, §95.) 'In Skinner v. Powers, 1 Wend. 451 . . . it is said by Chief Justice Savage that a charge of misconduct *of any specific kind* is not justified by proving plaintiff guilty of misconduct of a similar character . . .' (Quoting Burford v. Wible, 32 Pa. 95, 96, 97.) To the same effect see Restatement, Torts, §582, comment e": Kilian v. Doubleday & Co., Inc., 367 Pa. 117, 79 A. 2nd 657 (1951). (Parenthetical insertions supplied; italics the court's.)

Thus, even assuming arguendo that, in contrast to our finding of fact herein, Degnan actually did deliver to Cocco a vehicle different from the one selected by him, Cocco's proof of such facts would not constitute a successful defense here to Degnan's action for libel arising from the language of Cocco's signs.

Finally, a question properly exists as to whether Cocco's communication in this instance was privileged and, if the occasion was a privileged one, whether Cocco has abused that privilege upon the facts now before us. To begin with, it is obvious to us that Cocco has no claim to an *absolute* privilege in these circumstances: Rankin v. Phillippe, 206 Pa. Superior Ct. 27, 30, 211 A. 2d 56 (1965); Sum. Pa. Jur. Torts, §§483-493. On the other hand, if Cocco is to come within the protection supplied by a *qualified* privilege in the present case, it is because the communication assertedly concerns a subject matter of public interest, namely, "consumer protection"; Restatement, Torts, §498; Sum. Pa. Jur., Torts, §500.

Under Pennsylvania law, privilege is a matter of defense and the burden of proof is on the party claiming such privilege: Act of August 21, 1953, P. L. 1291, 12 PS §1584a; Arvey Corp. v. Peterson, 178 F. Supp. 132, 137 (E.D. Pa. 1959). To be qualifiedly or conditionally privileged it is essential that the com-

munication be made (1) upon a proper occasion; (2) from a proper motive; (3) in a proper manner; and (4) that it was based upon reasonable and probable cause; and it is always for the court to determine whether the alleged defamatory, publication is thus privileged: Baird, supra, at 275. If any *one* of these elements is lacking, the communication is not privileged: Rankin, supra, at page 32.

In the cause now before this court, it is to be observed that Cocco did not simply take action to warn the public of what he believed to be misdealings by Degnan. Instead, he filed suit against Degnan, seeking damages, *in his own behalf,* for injuries claimed to have been suffered by him personally. As heretofore indicated, however, upon consideration of his claim, the panel of arbitrators found no merit in Cocco's allegations concerning Degnan's course of conduct, and found for defendant therein, Degnan.

Only after the arbitrators found against him in his action for claims to personal damages against Degnan did Cocco erect his signs, and he did so almost simultaneously with the filing of his appeal from the arbitrators' decision. We are convinced, therefore, that the motive of Cocco in erecting the signs in question was *not* to inform the general public of "facts" in which it would have an interest, but rather to aid his own *individual* cause in recouping personal damages which he believed to have been occasioned by what he thought to be dishonest behavior by Degnan. Cocco has thus failed to demonstrate that he published his defamatory allegations upon a conditionally privileged occasion, in that he has published his statements in an *improper* manner, from an *improper* motive, on an *improper* occasion, and consequently we have determined that the

permanent injunctive relief prayed for by Degnan should be granted.

Degnan has also included a prayer for damages, but we find the only damages alleged to be entirely speculative. Degnan alleges in its post-trial brief that, due solely to the damaging effects of Cocco's signs, it had to undertake an extensive and widespread advertising campaign, at a cost to Degnan of $25,200. Degnan also asks reimbursement for its alleged legal fees of over $20,000 in pursuing this action *as well as* in defending in the action brought against it by Cocco.[13] The foundation for such claims of damage, however, has not been laid by Degnan, in that not a scintilla of evidence was presented at trial by Degnan, proving any loss of *sales* whatsoever by the dealer.

Our courts have held that where statements are libelous only by attaching an innuendo, general damages will not be awarded, and plaintiff must plead and prove special or particular damages: Munhall Homestead Housing Assn. v. Messinger Publishing Co., 25 D. & C. 2d 1, 5, 7, (1961); Mumma v. Pomeroy's, Inc., 38 D. & C. 2d 594, 599 (1965); Weider v. Hoffman, 238 F. Supp. 437 (M.D. Pa., 1965); McDonald v. Lee, 246 Pa. 253, 92 Atl. 135 (1914). This Degnan failed to do.

In light of the foregoing, the preliminary injunction shall be made permanent, with no general or special damages awarded to plaintiff. Nor will exemplary or punitive damages be awarded to plaintiff in this cause, in view of Cocco's strong belief in the truth of his allegations, and of the nature of this cause of action as arising only by innuendo, rather than from the literal

---

[13] Degnan does not distinguish between the fee structure for each action; since Cocco's suit against Degnan is far from being able to be characterized as a "nuisance suit," we can find not even a colorable claim of Degnan to recovery of its legal fees in defending that action.

meaning of the words themselves. See Hygienic Fleeced Underwear Co. v. Way, 15 Dist. Rep. 943, 33 Co. Ct. 133 (1906), affirmed 35 Pa. Superior Ct. 229 (1908). We accordingly enter the following

DECREE NISI

And now, to wit, this May 7, 1973, it is hereby ordered, adjudged and decreed as follows:

1. This court has equitable jurisdiction of the subject matter and of the parties hereto;

2. Defendant, Albert A. Cocco, is permanently enjoined from erecting and/or maintaining the signs above referred to;

3. The prayer of plaintiff, Degnan Chevrolet, Inc., for special, compensatory, and/or punitive damages is denied.

4. Costs of this proceeding are to be paid equally by Albert A. Cocco and by Degnan Chevrolet, Inc.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or to their respective counsel. Unless exceptions are filed within 20 days after such notice, this decree shall be entered upon praecipe by the prothonotary as the final decree.